[L. A. No. 8459.   In Bank.—August 26, 1926.]

In the Matter of the Application of the MONROVIA EVENING POST to be Declared to be a Newspaper of General Circulation.

[1] NEWSPAPERS — PUBLICATION OF OFFICIAL NOTICES—REQUIREMENTS OF.—When the law of California requires the publication of official notices or advertisements by any officer of this state, or any political subdivision thereof, or any officer of any court or county, city or town within the state, such publication must be made "only in a newspaper of general circulation . . . within the jurisdiction of such officer," unless no such paper exists within that jurisdiction, in which event it may be published in a newspaper of general circulation nearest thereto.

[2] ID.—NEWSPAPER OF GENERAL CIRCULATION — PRINTING AND PUBLISHING—SECTIONS 4460, 4463, POLITICAL CODE.—It was the clear intent of the legislature, expressed in sections 4460 and 4463 of the Political Code, to require a newspaper of general circulation to be both printed and published in the city, town or county wherein it seeks patronage of legal notices.

[3] ID. — DEFINITION OF "PUBLISH." — The word "publish" ordinarily means to disclose, reveal, proclaim, circulate or make public, but as the term is used in section 4460 of the Political Code, it is limited by the provisions of section 4463 of said code to mean that the newspaper shall have been actually issued from the identical city or political subdivision where it is printed, and it is "printed" where the mechanical work of producing the paper, to wit, the operation of typesetting and impressing the types upon the paper, is performed.

[4] ID.—POLICE POWER—CONSTITUTIONAL LAW.—It is not an unreasonable and unconstitutional violation of the police power of the state to require the mechanical printing of a newspaper of general circulation to be done in the same city where the newspaper is published and circulated.

---

1.  See 19 Cal. Jur. 1070; 20 R. C. L. 205.
2.  See 19 Cal. Jur. 1073.

[5] ID. — POWER OF LEGISLATURE — REGULATING PRIVATE BUSINESS. — The legislature, in the guise of exercising its police power, may not impose onerous or unreasonable burdens upon lawful and useful occupations, but the state has the unalienable right to reasonably regulate private business enterprises in the interest of public health, peace, morals or the general welfare, and the question of the reasonableness of police regulations is addressed primarily to the legislature, and courts will exercise the utmost liberality in upholding the legislative intent.

[6] ID.—PURPOSE OF PUBLICATION—PLACE.—The very purpose of requiring publication of official notices being to inform the people concerning proceedings of a public nature for their general welfare, it is reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required.

[7] ID.—LEGISLATIVE INTENT — STATUTORY CONSTRUCTION.—The intention of the legislature must be determined from the language of the statute, and a legislative body has the power within reasonable limitations to prescribe legal definitions of its own language, and when an act passed by it embodies a definition, it is binding on the courts.

---

(1) 29 Cyc., p. 697, n. 18 New.    (2) 29 Cyc., p. 697, n. 25 New. (3) 29 Cyc., p. 697, n. 25 New, 26 New.    (4) 29 Cyc., p. 697, n. 26 New.    (5) 12 C. J., p. 922, n. 69, p. 924, n. 72 New, p. 929, n. 21, p. 930, n. 25, p. 933, n. 39 New, p. 934, n. 48.    (6) 29 Cyc., p. 697, n. 26 New.    (7) 36 Cyc., p. 1105, n. 24, p. 1107, n. 30, 32.

APPEAL from a judgment of the Superior Court of Los Angeles County. F. C. Valentine, Judge. Reversed.

The facts are stated in the opinion of the court.

Walter F. Dunn, John A. H. Sturgeon, Dunn & Sturgeon and Harland G. Palmer for Appellant.

Vernon M. Brydolf for Respondent.

THOMPSON, J., *pro tem.*—This is an appeal from a judgment of the superior court of Los Angeles County declaring the "Monrovia Evening Post" to be a newspaper

---

5.   See 5 Cal. Jur. 704; 6 R. C. L. 217
7.   See 23 Cal. Jur. 730, 751; 25 R. C. L. 961.

of general circulation, pursuant to section 4460 of the Political Code.

The evident purpose of petitioner was to procure a decree authorizing the legal publication in that newspaper of official notices of the city of Monrovia. It had previously lost a competitive bid for the Monrovia city printing on the charge that it was not a newspaper of general circulation within the city. This petition was then presented.

The trial court found that "the 'Monrovia Evening Post' . . . is now, and has been continuously since July 9, 1923, a daily newspaper established and published in the city of Monrovia, County of Los Angeles." This finding is contrary to the evidence.

The evidence is without conflict to the effect that the "Monrovia Evening Post" is a daily newspaper which was established in July, 1923, and has an associated press membership and a substantial subscription list in and about the city of Monrovia. An office has been continuously maintained at Monrovia since the organization of the paper. Subscribers and news items are solicited there, and the literary features are actually performed in that city. All the mechanical portion of making-up and issuing the paper, however, including the stereotype plates, typesetting and presswork are done at the city of Pasadena, some distance from Monrovia, in the office and shop of the "Pasadena Evening Post" in conjunction with which newspaper the "Monrovia Evening Post" is regularly issued and circulated. This arrangement was conducted in the interest of business economy.

[1] When the law of California requires the publication of official notices or advertisements by any officer of this state, or any political subdivision thereof, or any officer of any court or county, city or town within the state, such publication must be made "only in a newspaper of general circulation . . . within the jurisdiction of such officer," unless no such paper exists within that jurisdiction, in which event it may be published in a newspaper of general circulation nearest thereto. (Pol. Code, sec. 4458.)

The legislature has specifically defined the requirements of a newspaper of general circulation, as well as the meaning of the terms "established," "printed" and "published."

Section 4460 of the Political Code provides that "A newspaper of general circulation is a newspaper . . . *printed and published* at regular intervals, in the state, county, city, city and county, or town *where such publication, or official advertising is given or made,* for at least one year preceding the date of such publication, notice or advertisement." (The italics are inserted by the court for emphasis.)

Section 4463 of the same code provides that " . . . The word 'printed' as used in said section (4460) shall mean, and be construed to mean, that the mechanical work of producing such a newspaper of general circulation, that is to say, the work of typesetting, and impressing types on paper, shall have been performed during the whole of the period as designated and required by said section. The word 'published,' as used in this section, shall mean and be construed to mean, that such a newspaper of general circulation *shall have been issued from the place where it is printed.* . . . " (The italics were inserted by the court.)

[2] It was the clear intent of the legislature, expressed in these two sections, to require a newspaper of general circulation to be both printed and published in the city, town or county wherein it seeks the patronage of such legal notices. [3] The word "publish" ordinarily means to disclose, reveal, proclaim, circulate or make public. But as that term is used in section 4460 of the Political Code, it is limited by the provisions of section 4463 to mean that the newspaper shall have been actually issued from the identical city or political subdivision where it is printed. And the last mentioned section specifically holds that it is "printed" where the mechanical work of producing the newspaper, to wit, the operation of typesetting and impressing the types upon the paper, is performed.

Applying the foregoing legislative definitions to the instant case as it is presented by the uncontradicted evidence, the "Monrovia Evening Post" is printed where the typesetting and mechanical part of the work is performed. The mechanical work is done at Pasadena and not at Monrovia. It necessarily follows that the "Monrovia Evening Post" is printed and published at Pasadena and not at Monrovia.

It may have been a matter of excellent business economy to print and publish the "Monrovia Evening Post" in con-

junction with the "Pasadena Evening Post" at its shop in Pasadena, but certainly, according to the clear letter of the statute, it is neither printed nor published at Monrovia, and is, therefore, not a newspaper of general circulation within the city of Monrovia, nor qualified to print legal notices which are required to be published in a newspaper of general circulation within that particular city.

In *Re McDonald*, 187 Cal. 158 [201 Pac. 110] it was held that the "Ontario Weekly Herald," a newspaper published and circulated at Ontario, California, to a *bona fide* list of subscribers and possessing the other qualifications required by section 4460 of the Political Code, was not prevented from enjoying the privileges and the status of a newspaper of general circulation merely because the mechanical operation of typesetting and presswork was actually done in the city of Colton. The court said that to so disqualify a newspaper merely because it was published and circulated in one city, while mechanical work of printing the paper was done in another city, would be to unduly restrict the evident intention of the legislature.

In the case of *Stanwood* v. *Carson*, 169 Cal. 640 [147 Pac. 562], the validity of a notice of street improvements was challenged on the ground that the notice appeared in a newspaper published in a building situated on the boundary between the city engaged in the street improvements and an adjoining city. The presswork was performed within the boundary of one city and the editorial and literary work was done in another city, although the entire process was conducted beneath the same roof of a single building. The court held this was a sufficient compliance with the statute. It was there said "The vital consideration being notice by publication. Such publication is the publication contemplated by law, with little or no regard paid to the mere place of printing, even when the word 'printing' coupled with 'publication' is embraced in the statutory requirement."

In both of these cases, however, the opinions are clearly based upon the legislative intent expressed in the statute as it then existed. The last case cited was decided in February, 1915. The McDonald case was decided in September, 1921. The contestant in the McDonald case was the California Press Association. It is a significant fact that the

legislative definitions of the terms "established," "printed" and "published," as appears in section 4463 of the Political Code, were added to the code in 1923, after these decisions had been rendered. A comparison of the language employed in section 4463 of the Political Code, with the construction placed by the court on the terms "printed and published," as appears in the McDonald opinion, makes it apparent that the legislature deliberately adopted the specific definitions of these terms for the express purpose of overcoming the effect of this decision. Since the adoption of this amendment it is now very clearly the legislative intention to require that a newspaper of general circulation be printed, published and issued from one and the same city, town, county or place where the notice of publication or official advertising is to be given or made, and that such newspaper shall be established, printed and published at regular intervals during the entire period required by section 4460.

[4] The respondent in the instant case contends that to require the mechanical printing to be done in the same city where the newspaper is published and circulated is an unreasonable and unconstitutional violation of the police powers of the state. Many cases are cited in which it has been held that various unreasonable restrictions of certain occupations were unconstitutional and void. None of these cases involve the exact question here presented, and are, therefore, scarcely worthy of review.

On the contrary, there are numerous cases in which it has been held that a great variety of lawful occupations and professions have been subject to reasonable legislative supervision. Nothing will be gained in reviewing these cases, since it appears that the reasonableness of such regulations must be determined largely from the surrounding facts and circumstances of each particular case.

There are a number of decisions of other jurisdictions which have declared that the place where the actual printing of a newspaper is done is immaterial in determining whether it is a newspaper of general circulation. We have been cited to no case, however, so holding, where there is a statute such as we have in California, specifically defining the meaning of the terms "established," "printed" and "published," or where the legislature has, in terms, at-

tempted to provide that the place where the mechanical work and printing is done is an essential factor in determining whether a newspaper is one of general circulation.

[5] It is true that the legislature, in the guise of exercising its police powers, may not impose onerous or unreasonable burdens upon lawful and useful occupations. But it is equally true that the state has the inalienable right to reasonably regulate private business enterprises in the interest of public health, peace, morals or the general welfare. The question of the reasonableness of police regulations is addressed primarily to the legislature, and courts will exercise the utmost liberality in upholding the legislative intent. (23 Cal. Jur. 757, sec. 132; *Brown* v. *City of Los Angeles,* 183 Cal. 783 [192 Pac. 716].) To be sure the police power may not be resorted to merely to promote private gain, but the public interest as distinguished from that of private individuals, is the basis of its power and alone warrants its exercise.

Does not the prescribing of the qualifications constituting a newspaper of general circulation authorizing it to print the official advertising and public notices required by law come directly within this rule? We think it does.

[6] The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a public nature for their general welfare. It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required. At least, it is not unreasonable to expect the citizens of a particular community to rely upon their local newspaper primarily to inform them of the proceedings of their own local officers and the affairs of local public importance. No doubt it is on this theory that the legislature has seen fit to require such official advertising to be done only in newspapers of general circulation, both printed and published in the place where such notices are given or made.

[7] The intention of the legislature must be determined from the language of the statute. (25 R. C. L. 961; *Ex parte Goodrich,* 160 Cal. 410 [Ann. Cas. 1913A, 56, 117 Pac. 451].) "It is well settled that a legislative body has the

power within reasonable limitations to prescribe legal definitions of its own language, and when an act passed by it embodies a definition it is binding on the courts." (25 R. C. L. 1049.) In construing the language of the legislature as it exists in the California Bank Act, wherein trust companies were classified and defined as banking institutions, this court said in *Estate of Wellings*, 192 Cal. 506, 519 [221 Pac. 628, 634], "We therefore entertain no doubt that it was competent for the legislature, considering the business which trust companies are doing in this state, to define such business as banking, if it were not such in fact, and throw around it the general safeguards provided for the banking business proper."

"Terms defined by the statute in which they are found will be presumed to have been used in the sense of the definition, and will be construed accordingly." (23 Cal. Jur. 751; *Meade* v. *Watson*, 67 Cal. 591 [8 Pac. 311].)

We are of the opinion that the definitions found in sections 4458, 4460 and 4463 of the Political Code, prescribing the qualifications of a newspaper of general circulation and defining the meaning of the terms "printed and published" are controlling on this court; that those sections of the code are not unconstitutional or void, and that the trial court erred in holding that the "Monrovia Evening Post" is a daily newspaper established and published in the city of Monrovia.

For the foregoing reasons the judgment is reversed.

Waste, C. J., Seawell, J., Richards, J., and Curtis, J., concurred.