[Civ. No. 5835. First Appellate District, Division Two.—July 20, 1927.]

In the Matter of the Application of JOHN E. HOYLE, to have the Standing of "The South San Francisco Journal and South San Francisco News" as a Newspaper of General Circulation Ascertained and Established.

Ross & Ross for Appellant.

Franklin Swart for Respondent.

THOMPSON (R. L.), P. J., *pro tem.*—This is an appeal from a decree adjudging "The South San Francisco Journal and South San Francisco News" to be a newspaper of general circulation pursuant to section 4462 of the Political Code.

Appellant contends that because a newspaper is made up in part of what is commonly termed "boiler-plate," material which is prepared elsewhere, the paper is not printed and published at South San Francisco, according to the definitions of the terms "printed" and "published" as provided by section 4463 of the Political Code.

The evidence is without substantial conflict. John E. Hoyle is the owner and publisher of the newspaper in question. For more than one year prior to the filing of the petition in this case that paper was printed, published, and issued from a fixed place of business located in South San Francisco; all of the local items of news and intelligence, as well as advertisements contained in the paper, were secured in that vicinity and printed with the object of serving the community; the mechanical part of producing the newspaper, including typesetting, editorial work, and impressing the type upon the paper, were all performed in that place; it possessed a *bona fide* paid subscription list in and about that city, and it was operated, issued, and circulated for the dissemination of news and intelligence of a general character. In the make-up of the paper, characteristic of the average rural press, the columns which were not required for paid advertisements or news items were filled with what is commonly called boiler-plate. The evidence indicates that this stereotype matter sometimes occupied from twenty to fifty per cent of the available space in the forms. ■ The sole question involved in this appeal is whether a newspaper which uses in its make-up boiler-plate material procured elsewhere than at the place where the paper is printed and published is qualified to

enjoy the standing and privileges of a newspaper of general circulation, as provided by statute.

Section 4460 of the Political Code provides that "A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a *bona fide* subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city and county, or town where such publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement. . . . "

The terms "established," "printed," and "published," as they are used in the preceding section, have been defined by the legislature in section 4463 of the Political Code. The word "printed" means that the mechanical operation of producing the newspaper, including the typesetting and the impressing of the type upon the paper, or what is commonly known as the presswork, shall have been performed during the whole of the period of time prescribed by statute to qualify a paper as one of general circulation. The word "published" means that the newspaper must have been issued from the same place where it is printed. ■ In order to qualify a newspaper as one of general circulation so as to entitle it to publish official notices and advertisements, it must be both printed and published in the city, town, or county where it seeks the patronage of such public advertisements. (Secs. 4460, 4463, Pol. Code; *Application of Monrovia Evening Post*, 199 Cal. 263 [248 Pac. 1017].)

■ In determining whether a paper which makes use of boiler-plate is qualified to enjoy the standing of a newspaper of general circulation, the language of the statute should be given a reasonable construction, keeping in mind the object sought to be accomplished by the legislature, which was to provide for an efficient means of displaying public notices in order to reach the attention of interested parties in a particular community. (*In re McDonald*, 187 Cal. 158 [201 Pac. 110]; *Application of Monrovia Evening Post, supra*.) In the case last cited it is said: "The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a

public nature for their general welfare. It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required.'' In this case the ''Monrovia Evening Post'' was held not to be a newspaper of general circulation in the city of Monrovia for the reason that all the mechanical portion of making up and issuing the paper, including stereotype plates, typesetting, and presswork, were performed in the printing-shop of the ''Pasadena Evening Post'' at Pasadena, and not at Monrovia.

Apparently the purpose of requiring a newspaper of general circulation to be both printed and published in the place where the public notices are to be made is to require such a paper to have a fixed and permanent abode. Evidently two things were considered as most important in determining the standing or permanency of a newspaper plant, namely, the location at which the mechanical part of the operation of making up the paper is performed, and, secondly, the process of issuing the paper, including the presswork, as well as the publication and circulation of the paper.

In the exercise of a liberal construction of the statute it would seem unreasonable to hold that the ''mechanical work of producing a newspaper'' is not performed at the place where the paper is issued, even though it has a fixed place of business where its presses, forms, type, stock, and printing apparatus are kept and used, where its editorial and mechanical work is done, and where local news is gathered, advertisements secured, and the bulk of its subscription list exists, merely because a percentage of its forms are made up of stereotype plates which are prepared elsewhere. This construction of the statute would probably disqualify every newspaper in existence, including the average rural press, as well as the more pretentious city daily papers, for all newspapers resort to the use of boiler-plate material and many of them profit by the use of the more modern matrix system as well as the telephoto process of making plates for use in their columns, most of which newspaper feature material is produced outside of the local printing-shop, and is furnished to the trade by syndicates which specialize in the service. It would seem almost impossible to successfully

operate a newspaper in this progressive age without the use of the modern stereotype material. The newspaper field is now favored with many able and instructive specialists in editorial work, and in every line of activity, including finance, commerce, trade, and agriculture, whose articles are stereotyped, syndicated, and sold to a wide circle of newspaper customers. The so-called "funny page" and the pictorial magazine department of the great daily papers, cartoons, cuts of individuals, historic, picturesque and tragic scenes of calamities, advertising plates of drugs, nostrums, books, magazines, and business enterprises of every sort are stereotyped or matrix-plated and sold to the trade for convenient and profitable use. Certainly it cannot be reasonably said that the use of this modern method of disseminating news and intelligence disqualifies a paper from becoming a newspaper of general circulation. It is true that primarily in the process of producing much of this boiler-plate material, the type is first set by means of a mechanical typesetting machine, from which the dies are made and the plates cast, after which, in the composite form of boiler-plate, the material is sold to the trade. Boiler-plate, as it is commonly used for newspaper purposes, may be considered in the nature of material or equipment by the aid of which a newspaper is made up and produced. ▮ We are of the opinion that the use of boiler-plate in the process of making up a newspaper is not included within the term of "typesetting" as a necessary part of the mechanical process which the statute requires to be performed in the place where the paper is printed and published. To hold otherwise would do violence to the cardinal rules of construction (Civ. Code, sec. 3542; 23 Cal. Jur. 722, 725), and would destroy the statute.

The judgment is therefore affirmed.

Sturtevant, J., and Nourse, J., concurred.