152 Cal.App.2d 901 (1957)
In re Proposed Establishment of the Standing of LYNWOOD HERALD AMERICAN. HERALD PUBLISHING COMPANY (a Corporation), Appellant,
v.
CALIFORNIA NEWSPAPER PUBLISHERS ASSOCIATION, INC. (a Corporation), Respondent.
Civ. No. 22183. 
California Court of Appeals. Second Dist., Div. Two. 
July 30, 1957.
 Butler & Hegner and James G. Butler for Appellants.
 Robert F. Tyler for Respondent.
 MOORE, P. J.
 Appellant Herald Publishing Company is the owner and publisher of the newspapers "Lynwood Herald American" and "Lakewood Herald American" together with six companion newspapers. Pursuant to the provisions of section 6000 [fn. 1] et seq of the Government Code, appellant filed separate petitions seeking to have the Lynwood and Lakewood papers each declared a newspaper of general circulation. The petitions are identical. The petition for the Lakewood Herald American alleges that the publication has a bona fide subscription list of paying subscribers in Los Angeles County and in the area known as Lakewood; that it has been printed and published, including typesetting and impressing type, at regular intervals for, at least, one year preceding the date of the filing of this petition in Los Angeles County, and in the City of Compton. That for more than one year last past, such newspaper has been published as a biweekly on Thursday and Sunday of each calendar week; that it is not now nor has it ever been devoted to the interest of or published for the entertainment or instruction of a particular class, profession, trade, calling, race or denomination. That it is a newspaper of general circulation published for the dissemination of local and telegraphic news, and intelligence of a general character in Los Angeles County; that the business address of said *903 newspaper is 5084 Faculty Avenue, Lakewood, California. The petition closes with the prayer that the court make its order ascertaining and establishing the Lakewood Herald American as a biweekly newspaper of general circulation, as defined in section 6000 of the Government Code, in and for the county of Los Angeles and the State of California and in the Lakewood area and that it is qualified to publish legal notices or publications including all official advertising required by the charter and ordinances of said county and the codes and general laws of California.
 In each case respondent filed an answer consisting of a general denial and several separate defenses. The only one of such defenses that is material to these appeals is as follows: "That said newspaper is not issued or published from the same town or city within which it is printed as required by Section 6004.5 of the Government Code."
 The cases having been consolidated for trial, it was found that all the allegations necessary to comply with section 6000 such as bona fide subscription lists and the dissemination of local news and intelligence of a general character in the county of Los Angeles were true. But it was determined also that each paper was printed wholly within the city of Compton and published in the respective cities of Lynwood and Lakewood; that because of this, the newspapers were not both printed and published within one and the same town or city as "required by Sections 6004 and 6004.5 of the Government Code." [fn. 2] Judgments were entered denying the petitions, and the appeals, consolidated for hearing in this court, followed.
 Appellant contends that (1) each petitioner has established that it is a newspaper of general circulation published for the dissemination of local and telegraphic news in the county of Los Angeles under the ruling of In re Christensen, 104 Cal.App.2d 375 [231 P.2d 152]; (2) section 6004.5 is violative of both the state and federal constitutions, and (3) there is evidence that petitioners come within the provisions of section 6004.5 of the Government Code.
 Section 6004.5 was added to the Government Code by the *904 Legislature in 1951, yet this is the first occasion it has had to be interpreted by an appellate court. When it was enacted, section 2 of the chaptered bill provided: "This act is declaratory of the existing law and does not make a substantive change therein." Before considering the effect, if any, that the enactment of the statute had upon the order of things as they then existed, it may be of value reasonably to review the judicial and legislative background leading to its enactment.
 Originally section 4460 of the Political Code read as follows: "A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement."
 In the case of Stanwood v. Carson, 169 Cal. 640 [147 P. 562], the validity of a notice of street improvements was challenged on the ground that it was published in a newspaper in which the presswork was performed within the boundary of one city and the editorial and literary work was done in another city, although the entire process was conducted beneath the same roof of a single building. In holding that the publication of the notice was a sufficient compliance with the statute, the court said: "... the vital consideration being notice by publication ..." (P. 647.)
 When in 1921 In re McDonald, 187 Cal. 158 [201 P. 110], followed, section 4460 was still in the same language. In that case the "Ontario Weekly Herald" was published and circulated at Ontario to a bona fide list of subscribers; also, it alleged the qualifications required by section 4460 to be declared a newspaper of general circulation. However, the mechanical work of typesetting and printing was done entirely in the city of Colton. The contestant (California Press Association) contended that the printing, publication and circulation had to be done in one and the same town in order to qualify the newspaper within section 4460.
 In rejecting this contention the court said: "To give a reasonable construction to the language of the statute, and keeping in view the object sought to be served by the legislation--that of having an effective medium of publicity for *905 legal notices in the community--it must be held that by the conjunctive 'and' it was not intended to require that the physical act of printing was to be done in the place of publication, but merely that the paper be printed and circulated there. We think it clear from this fact and the authorities cited that the word 'printed' was used in the statute in the sense of the definitions we have given." (P. 161.) The definitions referred to by the court were to the effect that "to print" is "to publish" as printing a book or an article.
 In 1923 the Legislature added section 4463 to the Political Code providing that "... The word 'printed' as used in said section [4460] shall mean, and be construed to mean, that the mechanical work of producing such a newspaper of general circulation, that is to say, the work of typesetting, and impressing types on paper, shall have been performed during the whole of the period as designated and required by said section. The word 'published' as used in this section, shall mean and be construed to mean, that such a newspaper of general circulation shall have been issued from the place where it is printed. ..." (Emphasis added.)
 In 1926, following the enactment of section 4463, supra, there came before the Supreme Court the case of Application of Monrovia Evening Post, 199 Cal. 263 [248 P. 1017]. The "Monrovia Evening Post" had previously lost a competitive bid for the Monrovia city printing on the charge that it was not a newspaper of general circulation within the city. Its petition to be so declared was granted by the lower court. The Supreme Court reversed the judgment on the ground that the finding that it was a "newspaper established in the City of Monrovia, County of Los Angeles" was contrary to the evidence.
 The facts were that although the newspaper had its office at Monrovia where subscribers and news items were solicited and all literary work done, all the mechanical portion of making up and issuing the paper, including the stereotype plates, typesetting and presswork, was done in Pasadena at the shop and office of the "Pasadena Evening Post"--in conjunction with which newspaper the Monrovia paper was regularly issued and circulated. This arrangement was conducted in the interest of business economy.
 At that time, section 4458 of the Political Code required the publication of official notices or advertisements by any officer of the state, or of a county, city or town to be made "only in a newspaper of general circulation ... within the *906 jurisdiction of such officer" unless no such paper existed within that jurisdiction, in which event it could be published in a newspaper of general circulation nearest thereto. [fn. 3]
 In considering the effect of section 4463 in connection with section 4460, the court held that "It was the clear intent of the legislature, expressed in these two sections, to require a newspaper of general circulation to be both printed and published in the city, town or county wherein it seeks the patronage of such legal notices." (Idem., p. 266.) The court rejected the ordinary meaning of the word "publish," such as to disclose, reveal, proclaim, circulate or make public, and held that as used in section 4460 it had been limited by the enactment of section 4463 to mean that the newspaper "shall have been actually issued from the identical city or political subdivision where it is printed." (Emphasis added.)
 Applying the legislative definitions to the fact that the typesetting and mechanical work was done in Pasadena, the court held: "It necessarily follows that the 'Monrovia Evening Post' is printed and published at Pasadena and not at Monrovia ... according to the clear letter of the statute, it is neither printed nor published at Monrovia, and is, therefore, not a newspaper of general circulation within the city of Monrovia, nor qualified to print legal notices which are required to be published in a newspaper of general circulation within that particular city." (Idem., pp. 266, 267, emphasis added.)
 The court concluded that by the enactment of section 4463 the Legislature expressly intended to overcome the effect of the McDonald case, supra, and "to require that a newspaper of general circulation be printed, published and issued from one and the same city, town, county or place where the notice of publication or official advertising is to be given or made. ..." (Idem., p. 268.)
 As recognized in the Christensen case, post, the Supreme Court was not required to pass upon the question of whether the "Monrovia Evening Post"--although disqualified in the city of Monrovia--would have been qualified for county advertising in the county of Los Angeles.
 In 1943 the provisions of sections 4460 and 4463 of the Political Code were incorporated into the Government Code under sections 6000- 6005, and in 1951 but prior to the enactment of section 6004.5, the appellate court in In re Christensen, 104 Cal.App.2d 375 [231 P.2d 152], was called upon *907 to answer the question left unanswered by the Monrovia case, supra, namely, is a newspaper that is printed and published in different places in the same county qualified for county advertising, although disqualified for city advertising under the Monrovia case.
 In the Christensen case, supra, the "San Pablo Reporter" was circulated in San Pablo but was printed in Richmond, Rodeo and Concord. All these cities were within Contra Costa County. The lower court entered judgment "That the 'San Pablo Reporter' is a newspaper of general circulation in and for the County of Contra Costa, State of California."
 On appeal, the appellant (contestant) contended that sections 6000, 6003 and 6004 of the Government Code required that a newspaper of general circulation be printed and published at the same location or situs and if not, then the newspaper could not be one of general circulation for any purpose. Respondent conceded that it did not qualify as a newspaper of general circulation for the City of San Pablo, but argued that since it was both printed and published entirely within the county of Contra Costa, it fulfilled the requirements for publication, notice of publication or official advertising required to be given or made in that county.
 In upholding the position of the respondent newspaper, the appellate court in Christensen said (page 378): "Although the exact question now before us was not involved in the Monrovia Evening Post case the interpretation of the legislative intent given by the Supreme Court seems sufficiently to support respondent's position that the paper need not be printed at its business situs but that it is sufficient that both publishing and printing take place in the political subdivision where publication must be made." (Emphasis added.)
 In rejecting appellant's argument that the code does not recognize a newspaper which is one of general circulation in some instances or jurisdictions and not in others the court said: "However section 6000, Government Code requiring that the newspaper has been established, printed and published in the state, county or city where publication is to be made expressly makes the newspaper of general circulation for some publications and not for others." (In re Christensen, 104 Cal.App.2d 375 at 378 [231 P.2d 152].)
 In the Monrovia case, the Supreme Court held that within the meaning of section 4463 of the Political Code (now Gov. Code, 6004) a newspaper is "published" at the town, city or place where it is printed and issued. It is declared also in *908 Christensen that a newspaper could not qualify for publications of the city in which it had its office and main circulation unless it was also printed in that city. Nevertheless, it could and did qualify as a newspaper of general circulation for the county in which it was both printed and published.
 This was the law as it existed at the time section 6004.5 was added to the Government Code by the enactment of Chapter 937, 1951 Statutes, page 2538, paragraph 1. Paragraph 2 affirmed: "The act is declaratory of the existing law and does not make a substantive change therein."
 [1a] Appellant naturally relies upon Christensen but, while admitting the Lakewood and Lynwood papers do not qualify for the purely local legal publications of those respective cities, earnestly contends that they do qualify as newspapers of general circulation for the publication of legal notices required to be published in the county of Los Angeles. This conclusion derives from the fact that the papers are both printed and published in the county where publication, notice by publication or official advertising is to be given or made. (Gov. Code, 6000.)
 Respondent contends that section 6004.5 was enacted to settle and clarify an existing conflict between the Monrovia and the Christensen decisions and to set forth exactly what the Legislature had determined the law always had been. Respondent urges also that section 6004.5 is only an amplification of section 6004.
 There is no conflict between Monrovia and Christensen. Both declared that for a newspaper to qualify as a paper of general circulation in the jurisdiction within which the publication was required to be made, the newspaper must be both printed and published within that jurisdiction.
 Now, what change or addition has section 6004.5 made to that statement of the law?
 In the first place, respondent urges we must reject the ruling of the Supreme Court in the Monrovia case, to wit, that under the statute, a newspaper is "published" at the place where it is "printed and issued" and accept the journalist's definition that a newspaper is "published" at the place appearing on its masthead, or at the place where it is entered as second class matter for mailing purposes. There is nothing in section 6004.5 that requires such an interpretation or that justifies a departure from the decision of the Supreme Court in Monrovia.
 Stated very bluntly, respondent asks that section 6004.5 *909 be interpreted in such a manner that it will prevent not only appellant, but also all so-called "chain newspapers" from qualifying for the publication of legal advertising, whether it be city, county or state.
 In asserting this position, respondent competely ignores the underlying purpose of the various statutes requiring legal notices to be placed in newspapers having a general circulation within the jurisdiction in which the publication must be made. Will that object be any better served by appellant's moving its printing plant out of the city of Compton and into an unincorporated area of Los Angeles County where it will be neither printed nor published in a town or city under the meaning of "publish" as defined in the Monrovia case?
 It is a matter of common knowledge that without the lucrative income resulting from "legal advertising" the smaller newspapers, especially weekly and biweekly publications, find it difficult to survive the competition of the metropolitan dailies. Yet "legal notices" in such papers are as likely to be seen and read in the jurisdiction where the publication is required to be made as they would be in the larger dailies. The interpretation respondent seeks to have given to section 6004.5 is the equivalent of a request that the law limit competition against itself and its members with respect to legal advertising. There is no specific or definite language that the Legislature intended any such result. [2] It would be contrary to the established policy of this state which is to encourage competitive enterprise and to proscribe monopolistic tendencies.
 [3] It is well settled that the words of a statute must be given such interpretation as will promote rather than defeat the general purpose of the law. (Department of Motor Vehicles v. Industrial Acc. Com., 14 Cal.2d 189, 195 [93 P.2d 131]; People v. Centr-O-Mart, 34 Cal.2d 702, 704 [214 P.2d 378].) It follows that the general purpose of the law with respect to the publication of legal notices would be hindered rather than be promoted by so construing section 6004.5 as to deprive appellant's publications from qualifying as newspapers of general circulation in the county in which they are both printed and published.
 If the Legislature intended section 6004.5 to achieve the result desired by respondent Publisher's Association it could and should have spelled it out in detail. [1b] There is nothing in its present language that does more than reaffirm the *910 holding in the Monrovia and Christensen cases, namely, that a newspaper of general circulation must be both printed and published in the jurisdiction within which the legal publication is required by law to be made. It follows that in the instant case, the "Lynwood Herald American" and the "Lakewood Herald American" are qualified as papers of general circulation in the county of Los Angeles.
 In view of the conclusions thus derived it is deemed unnecessary to comment upon the other points advanced by appellant.
 The judgments are reversed.
 Ashburn, J., and Richards, J. pro tem., [fn. *] concurred.
 Section 6004: "For a newspaper to be 'published,' it shall have been issued from the place where it is printed and sold to or circulated among the people and its subscribers during the whole of the one year period."
 Section 6004.5: "In order to qualify as a newspaper of general circulation the newspaper, if either printed or published in a town or city, shall be both printed and published in one and the same town or city."
NOTES
[fn. 1] 1. Government Code, 6000: "A 'newspaper of general circulation' is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement."
[fn. 2] 2. Government Code:
[fn. 3] 3. Now found in sections 6041 and 6042, Government Code.
[fn. *] *. Assigned by Chairman of Judicial Council.