CONLEY, P. J.
Michael P. Garten, publisher of the “News-Ledser,” a paper of West Sacramento in Yolo County, filed a petition in the superior court to have its standing as a newspaper of general circulation in the county ascertained and established. (Gov. Code, § 6020.) In due course, the owner *208 and publisher of the “Woodland Record,” a competing newspaper in Yolo County filed' objections to the petition. After the publication of a requisite notice to the public, a formal hearing was held and the superior court denied the petition. While several points were urged against the granting of the petition, the case was decided on one issue only; the trial court correctly concluded that the “printing” of the paper on a monthly average for more than 50 percent of the year previous .to the filing of the petition took place in a county other than Yolo (Gov. Code, § 6003). The copies of the “News-Ledger” circulated to the subscribers were produced by the offset printing method. Generally speaking, all of the work, mechanical and otherwise, necessary to produce the master sheet df this weekly paper was done in Yolo County, but the press work, except for three issues, was effected in the City and County of San Francisco where the offset printing method was used; this process of duplication is based upon photography of the master sheet and not by the impression of type on paper.
The witness, Feher, testified on cross-examination:
,“Bx Mb. Fbiedman: . . . Mr. Feher, the papers that actually go.out to the subscribers which were duplicated or made in San Francisco- never had any impressing of type on that particular paper done in-West Sacramento, did they?
“A Mr. Friedman,' in the offset process, there is no impressing of type on paper except that which we do ourselves in our own plant. There is merely duplication. Transference of an"image from a negative to a master to a blanket, and it is the blanketi-^the rubber blanket that comes in contact with the paper. There is no type that comes in contact with the paper in the press work.
“Q So the answer to my question, am I correct, that the answer is yes, there is no impressing of type on the paper in West Sacramento that actually goes out to the individual subscriber ?
“ AI am afraid I will have to say yes.
“Fbiedman: .Thank you. . .
“Cqubt-: The actual paper received through the mail, the print or pictures,, whatever is on there, .is not done in West Sacramento no matter how it got there. It was placed on this paper in San Francisco?,
“A That’s correct, it isn’t impressed — not typed and pressed on paper.. ... • , ,- •-
“Coubt: However, this particular piece of paper didn’t receive the impression in Yolo County. It was in San Francisco at the time we are talking about ?
*209 “A Mr. Friedman, eo.uld you ask the question once more?
“Friedman: Answer the court’s question.
“Court: Yes. Suppose I subscribe to your paper. I get the paper through the mail. It is a physical piece of paper. Certain impressing on it, commonly printed matter and pictures there. At one time this is a blank piece of paper and then becomes colored with various images developed into large bluish pictures. Where did that paper pass from the blank stage to the stage where it had impressions on it?
“A At San Francisco.
“Friedman: And it came from the galvanized piece of—
“A It came from the original, similar to that.
“Friedman: It is transposed?
“A Transference of image from the master to the negative to the pressmaster, to a rubber blanket and there is no type impressed on paper to produce the final result. It is duplicated. It isn’t impressed with type. It is only transference of images done by chemical process so there is no type of any kind involved in the press work. ’ ’
Offset is a printing process in which the printing is done first on the rubber surface of a rotating cylinder. The impression is then transferred to paper by the pressure of other cylinders. The term offset describes the offsetting of the ink from the rubber; it is a planographic technique.
It is now general knowledge that offset is tending to replace the older forms of lithography in nearly every field. Offset lithography is usually done on a press having three cylinders; a lithographic plate is wrapped around the first cylinder. This plate is a sheet of aluminum or zinc about as thick as heavy paper. The plate prints on a second cylinder which is covered by a rubber blanket. The impression on the rubber is then printed on the blank paper carried by the third cylinder.
The process is being largely improved and refinements in the photographic methods for making the plates are being widely developed. The image of words and pictures to be printed is applied to the metal surface by a photographic process called photolithography. As the testimony indicates, a picture of the final proof (prepared in Yolo County) was taken in San Francisco and then, from the negative, the picture was transferred to the metal sheet, a sensitized master ; the sheet was then wrapped on a cylinder and, in turn, ink was put on a rubber based cylinder and the blank paper impressed by the rubber cylinder. The form of the paper was *210 completely prepared in Yolo County, then duplicated in San Francisco and the multiple copies picked up, returned to Yolo County and there mailed, or otherwise delivered, to subscribers.
The master sheet was originally made in West Sacramento by the use of specialized typewriters, the setting of hand type for the advertisements, and the inclusion of news photographs through a particularized process.
Section 6000 of the Government Code provides: “A ‘newspaper of general circulation’ is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement. ’ ’
Unquestionably, this newspaper was “established,” having been in existence, under the same name, for more than one year prior to the filing of the petition. (Gov. Code § 6002.)
Section 6003 of the same code provides: ‘ ‘ For a newspaper to be ‘printed,’ the mechanical work of producing it, that is the work of typesetting and impressing type on paper, shall have been performed during the whole of the one year period.
“If a monthly average of at least 50 per cent of the work of typesetting and a monthly average of at least 50 per cent of the work of impressing type on paper is done in accordance with the other provisions of this article, the requirements embodied in ‘ printed ’ are met. ’ ’
Section 6004 of the Government Code is as follows: “For a newspaper to be ‘ published, ’ it shall have been issued from the place where it is printed and sold to or circulated among the people and its subscribers during the whole of the one year period. ’ ’
The duplicated papers were mailed or otherwise circulated to the subscribers from West Sacramento in Yolo County.
Section 6004.5 of that code provides: “In order to qualify as a newspaper of general circulation the newspaper, if either printed or published in a town or city, shall be both printed and published in one and the same town or city.”
It will thus be seen that the meaning of the word “printed” as used in the Government Code is of the essence. The petitioner argues that the word contemplates only two things: (1) “typesetting,” and (2) “impressing type on paper,” *211 and points out that all of the typesetting of any kind that was done in connection with the preparation of the master sheet was in Yolo County in that the only “typesetting” was effected through the use of typewriters which properly spaced accounts of the news and by the hand-setting of advertisements, and that all of the “impressing type on paper” was also done in Yolo County in connection with the preparation of the master sheet. On the contrary, the opposition argues that the phrase 11 the work of typesetting and impressing type on paper” was merely illustrative of the preparation and issuance of a newspaper of a passing reference to what had previously been the exclusive method of printing a newspaper with prepared type, that “the mechanical work of producing it” was the essential portion of section 6003 of the Government Code, and that the word “printed” contained in the same code section meant the reproduction of multiple copies of the newspaper and was not necessarily confined to the use of type, but adopted the general connotation of the word “printed” as being a commercial duplication rather than a reproduction by the use of type.
Mr. Justice Peek in his opinion in In re “Sonora Daily,” 108 Cal.App.2d 53, 59 [238 P.2d 111], adopted the latter meaning, saying: “We conclude that in sections 6000 and 6003 of the Government Code the word ‘printed’ is used in the broader sense heretofore discussed, and that it includes the means of reproduction used by respondent. While there may be substantial objections to the use of a varityper and offset-press as a means of producing a newspaper, whatever those objections may be, the problem is a matter of policy more properly addressed to the Legislature than to this court. ’ ’
We believe that the trial court was correct in holding that the general mechanical means of multiplying copies of a newspaper was what the Legislature referred to in the second paragraph of section 6003 of the Government Code rather than an exclusive means of using type to reproduce copies of a paper. As is said In re Hoyle, 84 Cal.App. 511, 513 [258 P. 726] :
“In order to qualify a newspaper as one of general circulation so as to entitle it to publish official notices and advertisements, it must be both printed and published in the city, town, or county where it seeks the patronage of such public advertisements. [Citations.]” (See Application of Monrovia Evening Post, 199 Cal. 263 [248 P. 1017]; In re Lynwood *212 Herald American, 152 Cal.App.2d 901, 909-910 [313 P.2d 584].)
The word “printing” with respect to a newspaper, in former times, acquired a practical connotation in the minds of many people because then it was practically limited in the business to impressing type on paper. However, the word itself has no such limited or exclusive meaning. In fact, it relates to the transfer of an image by ink to paper or cloth, and Webster thus gives an initial definition of the word: “A reproduction (as on paper or cloth) of an image from a printing'surface made typically by a contact impression that causes a transfer of ink.” (Webster’s Third New International Dietionáry.) This is just what happens in a duplication of a newspaper by the use of an offset press.
~ ' The trial court was correct in holding that the necessary’ facts for establishing that the “News-Ledger” was a paper of general circulation in Yolo County were not present, because the printing of the paper for the preponderant part of one year before the filing of the petition did not occur in Yolo County and, therefore, the requirements of section 6003 of the Government Code relative to the printing of the paper were not observed.
The order is affirmed.
Stone, J., and Gargáno, J., concurred.
A petition for a rehearing was denied November 16, 1967, and the opinion was modified to read as printed above. Appellant’s petition for a hearing by the Supreme Court was denied December 13, 1967.