[No. B230791. Second Dist., Div. Three. Oct. 11, 2011.]

In re Establishment of THE WALL STREET JOURNAL as a Newspaper of General Circulation.
ANDREW P. JOHNSON, Petitioner and Respondent, v.
METROPOLITAN NEWS COMPANY, Contestant and Appellant.

COUNSEL

Roger M. Grace and Jo-Ann W. Grace for Contestant and Appellant.

Drinker Biddle & Reath and Adam J. Thurston for Petitioner and Respondent.

OPINION

**CROSKEY, J.**—Metropolitan News Company (MNC) appeals a judgment declaring The Wall Street Journal (WSJ) a newspaper of general circulation for the City of Los Angeles pursuant to Government Code section 6000.[1] MNC contends WSJ fails to satisfy the statutory requirements because it is not "printed and published" exclusively in the City of Los Angeles and because the "typesetting" does not take place in the city. We conclude that MNC has shown no error and will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

WSJ is a daily newspaper published in New York City and several other cities by Dow Jones & Company, Inc. Andrew P. Johnson, a manager of Dow Jones & Company, Inc., filed a petition pursuant to section 6020 to declare WSJ a newspaper of general circulation for the City of Los Angeles.

MNC opposed the petition, arguing that WSJ is a national newspaper and "is not a Los Angeles newspaper" (italics omitted). MNC also argued that the petition failed to allege that the "typesetting" takes place in the City of Los Angeles and therefore failed to properly allege that the newspaper is printed in the city. MNC argued further that a newspaper can be "printed and published" within the meaning of sections 6000 and 6004.5 in one city and

---

[1] All statutory references are to the Government Code unless stated otherwise.

only one city and therefore cannot qualify as a newspaper of general circulation for more than one city.

After a hearing on the petition, the trial court entered an order on December 7, 2010, declaring WSJ a newspaper of general circulation for the City of Los Angeles. The court found that WSJ was printed in the city for at least one year before the filing of the petition because during that period of time "the mechanical work of multiplying copies of the newspaper has been performed in the City of Los Angeles." The court also found that WSJ was published in the city during that period of time and that the other statutory requirements had been satisfied.

MNC timely appealed the order.[2]

## CONTENTIONS

MNC contends (1) WSJ is not "printed and published" in the City of Los Angeles because it is printed in other cities and cannot be "printed and published" within the meaning of section 6000 in more than one city, and (2) WSJ is not printed in the City of Los Angeles because the "typesetting," or its modern equivalent of computer keyboard typing by newspaper reporters, does not take place in the city.

## DISCUSSION

### 1. Statutory Requirements

Certain official notices must be published in a newspaper of general circulation. (§ 6040.) A newspaper of general circulation is defined as "a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication,

---

[2] A proceeding on a petition under section 6020 is a special proceeding. (*In re Herman* (1920) 183 Cal. 153, 156 [191 P. 934] [involved a petition under former Pol. Code, § 4462, from which § 6020 was derived]; *In re Molz* (2005) 127 Cal.App.4th 836, 841 [26 Cal.Rptr.3d 131].) "A judgment in a special proceeding is the final determination of the rights of the parties therein." (Code Civ. Proc., § 1064.) The "final decision or judgment" in a proceeding on a petition under section 6020 is appealable. (§ 6026.) The California Constitution confers appellate jurisdiction in the Court of Appeal, despite the provision in section 6026 stating that the appeal is to the Supreme Court. (*In re Perris City News* (2002) 96 Cal.App.4th 1194, 1197 [118 Cal.Rptr.2d 38].) We regard the order granting the relief requested in the petition as an appealable judgment because no issue was left for future consideration. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698 [107 Cal.Rptr.2d 149, 23 P.3d 43].)

or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement." (§ 6000.)

Other statutory provisions elaborate on the requirement that a newspaper of general circulation must be "printed and published" in a particular place. Section 6003, enacted in 1943 (Stats. 1943, ch. 134, p. 988), states:

"For a newspaper to be 'printed,' the mechanical work of producing it, that is the work of typesetting and impressing type on paper, shall have been performed during the whole of the one year period.

"If a monthly average of at least 50 per cent of the work of typesetting and a monthly average of at least 50 per cent of the work of impressing type on paper is done in accordance with the other provisions of this article, the requirements embodied in 'printed' are met."[3] (§ 6003.)

Section 6004 states: "For a newspaper to be 'published,' it shall have been issued from the place where it is printed and sold to or circulated among the people and its subscribers during the whole of the one year period."

Section 6004.5, enacted in 1951 (Stats. 1951, ch. 937, § 1, p. 2538), states: "In order to qualify as a newspaper of general circulation the newspaper, if either printed or published in a town or city, shall be both printed and published in one and the same town or city."

Section 6005 states: " 'Printed' and 'published' are not synonymous. Each relates to separate acts or functions necessary to constitute a newspaper of general circulation."

A newspaper, through its publisher, manager, editor or attorney, may file a verified petition to establish its standing as a newspaper of general circulation. (§ 6020.) The petition must be published in the newspaper itself and in another newspaper of general circulation. (§ 6021.) Any person may contest the petition. (§ 6022.) The court must "render its decision and judgment" within 10 days after the hearing. (§ 6023.) An appeal may be taken "from any final decision or judgment" so rendered. (§ 6026.)

---

[3] Section 6003 was derived from former Political Code section 4463, originally enacted in 1923, which referred to "the mechanical work of producing such a newspaper of general circulation, that is to say, the work of typesetting and impressing types on paper." (Stats. 1923, ch. 258, § 1, p. 512.) Former Political Code section 4463 was amended in 1927 to include language substantially the same as the second paragraph of section 6003. (Stats. 1927, ch. 266, § 1, p. 485.)

## 2. *A Newspaper Need Not Be "Printed and Published" Exclusively in One City to Qualify as a Newspaper of General Circulation*

MNC construes section 6004.5 to mean that a newspaper of general circulation must be printed and published in one city and only one city. MNC argues, "[i]t follows that 'a newspaper printed and published in one city may not qualify as a newspaper of general circulation for another city.' *Western States Newspapers, Inc. v. Gehringer* (1962) 203 Cal.App.2d 793, 797 [22 Cal.Rptr. 144]." We conclude that MNC misconstrues the statute.

■ "Our fundamental task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) Because the statutory language ordinarily is the most reliable indicator of legislative intent, we begin by examining the words of the statute. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, we presume that the Legislature meant what it said and the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)" (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1448–1449 [63 Cal.Rptr.3d 816].)

The plain language of section 6004.5 states that a newspaper must be both printed and published in the same town or city to qualify as a newspaper of general circulation for that town or city. This is consistent with the judicial construction of "printed and published" in Government Code section 6000 and its predecessor, former Political Code section 4460, prior to the 1951 enactment of Government Code section 6004.5. (*Application of Monrovia Evening Post* (1926) 199 Cal. 263, 266 [248 P. 1017] [stated that a newspaper must be printed and published in the same city, town or county to qualify as a newspaper of general circulation]; *In re Hancock* (1949) 92 Cal.App.2d 481, 488 [207 P.2d 61] [same]; *In re Hoyle* (1927) 84 Cal.App. 511, 513 [258 P. 726] [same].) An uncodified statute enacted in 1951 at the same time that section 6004.5 was originally enacted stated that section 6004.5 was declaratory of existing law and that no substantive change was intended. (Stats. 1951, ch. 937, § 2, p. 2539.) Neither the plain language of section 6004.5 nor any prior case authority suggests that a newspaper that is both printed and published in one town or city cannot qualify as a newspaper of general

circulation for another town or city in which it is both printed and published or that a newspaper cannot qualify as a newspaper of general circulation for more than one town or city where it is both printed and published.

■ Section 6008, enacted in 1974 (Stats. 1974, ch. 241, § 1, p. 448), provides alternative criteria to qualify as a newspaper of general circulation. The newspaper must be "published at regular intervals of not less than weekly in the city, district, or judicial district for which it is seeking adjudication for at least three years preceding the date of adjudication," but need not be printed in that same city, district or judicial district. (§ 6008, criterion (a); see *In re Tri-Valley Herald* (1985) 169 Cal.App.3d 865, 871 [215 Cal.Rptr. 529].) The newspaper also must satisfy other requirements, including that "[i]t has only one principal office of publication and that office is in the city, district, or judicial district for which it is seeking adjudication." (§ 6008, criterion (d).) Section 6000, in contrast, does not state that to qualify under that statute a newspaper must have only one principal office of printing and publishing. Sections 6000 and 6008 are alternative provisions for qualifying as a newspaper of general circulation, and the requirements of section 6008 cannot be read into section 6000 if those requirements are not stated there. (*In re San Diego Commerce* (1995) 40 Cal.App.4th 1229, 1234–1235 [47 Cal.Rptr.2d 303].)

*Western States Newspapers, Inc. v. Gehringer, supra,* 203 Cal.App.2d 793, cited by MNC, is not on point. That case involved a statute providing for publication of a delinquent tax list for county taxes in a newspaper of general circulation. The statute did not specify whether the newspaper must be one of general circulation for the city or the county. (*Id.* at pp. 794–795.) The defendants published a delinquent tax list in a newspaper of general circulation for the county. (*Id.* at p. 796.) *Western States Newspapers* held that this complied with the statute and that the statute did not require publication in a newspaper of general circulation for each city within the county. (*Id.* at pp. 797–798.)

*Western States Newspapers, Inc. v. Gehringer, supra,* 203 Cal.App.2d at page 797, stated, "[a]lthough a newspaper printed and published in one city may not qualify as a newspaper of general circulation for another city, it does qualify as a newspaper of general circulation for the county in which it is both 'printed' and 'published.' [Citations.]" We understand this to mean that a newspaper that is both printed and published in the same city does not qualify as a newspaper of general circulation for another city in which it is not printed and published, but may qualify as a newspaper of general circulation for the county in which it is both printed and published. Contrary to MNC's argument, this quoted language does not suggest that a newspaper that is "printed and published" in one city within the meaning of sections 6000 and

6004.5 cannot be "printed and published" in another city as well or that a newspaper cannot qualify as a newspaper of general circulation for more than one city.

■ Accordingly, we hold that section 6004.5 requires a newspaper to be both printed and published in the same town or city in order to qualify as a newspaper of general circulation for that town or city. Section 6004.5, however, does not preclude a newspaper that is both printed and published in more than one town or city from qualifying as a newspaper of general circulation for a town or city in .which it is both printed and published and does not preclude a newspaper from qualifying as a newspaper of general circulation for more than one town or city.

### 3. *A Newspaper Is "Printed" Where Circulation Copies Are Mechanically Produced*

■ Section 6003 states that a newspaper is " 'printed' " where "the mechanical work of producing it, that is the work of typesetting and impressing the type on paper," is performed. Both parties agree that "typesetting" as that term was used at one time to refer to the use of handset moveable type generally has not been performed in the production of newspapers for a long time and generally was not performed in 1943 when section 6003 was first enacted. By that time, other printing methods were in general use. Moreover, whatever meaning the term "typesetting" might have had in 1943, the parties agree that the mechanical means of producing a newspaper generally have changed since then. We believe that it is likely that advances in science and technology will continue to result in changes affecting the mechanical production of newspapers and that any specific statutory description of a particular method soon would become outdated.

The courts have held that the term "printed" as used in sections 6000 and 6003 refers to the mechanical production of circulation copies of a newspaper regardless of the method employed, and that "the work of typesetting and impressing type on paper" (§ 6003) merely describes a method that was once in common use and does not limit the meaning of the term "printed." (*In re News-Ledger* (1967) 255 Cal.App.2d 211, 215 [63 Cal.Rptr. 69] (*News-Ledger*); *In re "Sonora Daily"* (1951) 108 Cal.App.2d 53, 58–59 [238 P.2d 111] (*Sonora Daily*).)

*News-Ledger, supra*, 255 Cal.App.2d 211, involved a newspaper that was produced by offset printing. A metal plate was created bearing the photographic image of a "master sheet." The metal plate was placed on a rotating cylinder. The image was transferred from the metal plate to the rubber surface of another cylinder and then transferred from there onto paper. (*Id.* at p. 213.)

The circulation copies were produced in this manner without the impressing of type on paper. The master sheet was created in Yolo County and photographed in San Francisco, where the circulation copies were produced. (*Id.* at pp. 213–214.) The petitioner sought to establish the newspaper as a newspaper of general circulation for Yolo County, arguing that the newspaper was printed in Yolo County because the only " 'typesetting' " and " 'impressing type on paper' " occurred in connection with the creation of the master sheet in Yolo County through the use of typewriters. (*Id.* at pp. 211, 214–215.)

*News-Ledger* rejected this argument, stating that the statutory language "the work of typesetting and impressing type on paper" (§ 6003) was merely illustrative of a method of printing newspapers, and that a newspaper is " 'printed' " where " 'the mechanical work of producing it' " takes place. (*News-Ledger, supra*, 255 Cal.App.2d at p. 215.) *News-Ledger* stated further that the second paragraph of section 6003 was intended to refer to "the general mechanical means of multiplying copies of a newspaper . . . rather than an exclusive means of using type to reproduce copies of a paper." (255 Cal.App.2d at p. 215.) *News-Ledger* held that the newspaper was not printed in Yolo County because the mechanical work of producing circulation copies did not occur there. (*Id.* at pp. 215–216.)

*Sonora Daily, supra*, 108 Cal.App.2d 53, also involved a newspaper that was produced by offset printing. (*Id.* at p. 54.) *Sonora Daily* rejected the argument that "printed" within the meaning of sections 6000 and 6003 was limited to reproduction by means of " 'typesetting' " and " 'impressing type on paper.' " (*Sonora Daily, supra*, at p. 55.) Considering the legislative history of the statutes, *Sonora Daily* stated of former Political Code section 4463, "[t]he phrase in section 4463, 'that is to say, the work of typesetting and impressing types on paper,' appears more to be descriptive of the type of operations included within the term 'mechanical work of producing' rather than to limit or narrow the general meaning of the word 'printed' so as to include only one particular means of printing." (*Sonora Daily, supra*, at p. 58.) *Sonora Daily* held that the term "printed" in section 6000 referred generally to the mechanical work of producing a newspaper, including by offset printing. (*Sonora Daily, supra*, at p. 59.)

■ We conclude, consistent with these opinions, that "the work of typesetting and impressing type on paper" (§ 6003) was intended to generally describe the mechanical work of producing circulation copies of a newspaper, and was not intended to limit the meaning of "printed." We hold that a newspaper is "printed," within the meaning of sections 6000 and 6003, at the place where the mechanical production of circulation copies of the newspaper takes place, whatever the particular means of production employed. By this

definition, WSJ is printed in the City of Los Angeles because the mechanical work of producing circulation copies of the newspaper has taken place in the city for the requisite period of time.[4] For purposes of section 6000, the location where the newspaper reporters type their stories or, in MNC's words, "plunk on keys of PCs to form the images of letters," is irrelevant.

## *DISPOSITION*

The judgment is affirmed. Johnson is entitled to recover his costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

---

[4] MNC does not dispute the fact that the mechanical work of producing circulation copies takes place in the City of Los Angeles, so we need not discuss the method of production.