169 Cal.App.3d 865 (1985)
215 Cal. Rptr. 529
In re Establishment of the TRI-VALLEY HERALD as a Newspaper of General Circulation.
BAY AREA PUBLISHING COMPANY, INC., Petitioner and Respondent,
v.
LESHER COMMUNICATIONS, INC., Contestant and Appellant.
Docket No. A023521.
Court of Appeals of California, First District, Division Three.
June 28, 1985.
*866 COUNSEL
Martin W. Inderbitzen and Varni, Fraser, Hartwell, McNichols & Rogers for Contestant and Appellant.
Gene Rhodes for Petitioner and Respondent.
*867 OPINION
MERRILL, J.
Contestant and appellant Lesher Communications, Inc., appeals from a judgment establishing the Tri-Valley Herald as a newspaper of general circulation in the City of Pleasanton.

I.
Floyd Sparks is the president of respondent Bay Area Publishing Company and the publisher of a newspaper known as the Tri-Valley Herald. On February 23, 1983, Bay Area Publishing Company filed a verified petition seeking a judgment ascertaining and establishing the Tri-Valley Herald as a newspaper of general circulation in the City of Pleasanton pursuant to Government Code sections 6008 and 6020.[1] Respondent sought such adjudication in order to qualify the newspaper for publishing legal notices in that jurisdiction.[2]
Section 6008 provides: "Notwithstanding any provision of law to the contrary, a newspaper is a `newspaper of general circulation' if it meets the following criteria: [¶] (a) It is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers and has been established and published at regular intervals of not less than weekly in the city, district, or judicial district for which it is seeking adjudication for at least three years preceding the date of adjudication. [¶] (b) It has a substantial distribution to paid subscribers in the city, district, or judicial district in which it is seeking adjudication. [¶] (c) It has maintained a minimum coverage of local or telegraphic news and intelligence of a general character of not less than 25 percent of its total inches during each year of the three-year period. [¶] (d) It has only one principal office of publication and that office is in the city, district, or judicial district for which it is seeking adjudication. ... [¶] As used in this section: ... (2) `Published' means issued from the place where the newspaper is sold to or circulated among the people and its subscribers during the whole of the three-year period." (Italics added.)
Section 6020 provides: "Whenever a newspaper desires to have its standing as a newspaper of general circulation ascertained and established, it may, by its publisher, manager, editor or attorney, file a verified petition *868 in the superior court of the county in which it is established, printed and published, setting forth the facts which justify such action."
In its verified petition, respondent, in essence, averred that the Tri-Valley Herald met the section 6008 criteria in every particular. The petition was contested by appellant, the owner of a rival newspaper in the Pleasanton area, the Valley Times, which apparently has already been adjudicated a newspaper of general circulation in that jurisdiction. Appellant concedes that the Tri-Valley Herald meets the first three criteria set by section 6008, but claims that it failed to meet the fourth, i.e., "[i]t has only one principal office of publication and that office is in the city, district, or judicial district for which it is seeking adjudication." (§ 6008, subd. (d).) A hearing on the matter was convened April 12, 1983.
At the hearing, the uncontroverted evidence established the following: the Tri-Valley Herald has been in existence under one name or another since 1874. It has operated under its current name since 1973. It is a "daily" newspaper which is published seven days a week. It has a total circulation of approximately 21,000, "virtually" all paid subscribers, 4,500 of which reside in Pleasanton. It is distributed to the residents of Pleasanton, Dublin, Livermore, San Ramon, Danville, Alamo and Diablo.
The newspaper has offices in Pleasanton, Livermore, Danville, and Hayward. The Pleasanton office is the newspaper's distribution center from which the newspaper is circulated. It is the home of the newspaper's circulation manager and its accounting personnel for circulation and "virtually all" of its circulation staff (some 50 employees). The site consists of a physical plant, a warehouse and a parking area. In addition to the circulation department, the plant houses the newspaper's sports department as well as a display and classified advertising department. The warehouse stores all of the newspaper's preprinted inserts which are ultimately inserted into the paper at the Pleasanton facility prior to circulation. The parking area accommodates all of the newspaper's delivery vehicles. Approximately 65 of the newspaper's 100 to 120 employees work at the Pleasanton office.
The Tri-Valley Herald's Livermore office houses most of the newspaper's department managers and has departments for display and classified advertising, editorial and accounting.
The newspaper's smallest office in Danville is comprised of editorial, display and classified advertising departments.
The Tri-Valley Herald's publisher's office is in Hayward. Most "senior department heads" are located in this office. The newspaper is printed in Hayward.
*869 Based on this evidence, the trial court on June 3, 1983, granted respondent's petition and adjudicated the Tri-Valley Herald a newspaper of general circulation for the City of Pleasanton pursuant to section 6008. In its statement of decision the court said: "The legal basis for the court's decision is: Legislative intent in enacting Government Code [§ 6008] in 1974 was to provide alternative, liberalized standards (from Government Code 6000 and 6004.5) of general circulation adjudication, to the end that the widest possible circulation of legal notices to those concerned and affected could occur.
"Section 6008 (Government Code) did not define `principal office of publication.' It is the opinion of this Court that the controlling words are `of publication'. Section 6008 recognized the modern day mechanics of news dissemination. The Court is of the further opinion that the functions of Tri-Valley Herald performed at Pleasanton meet the criteria and intent of Government Code 6008."
This appeal followed.

II.
The sole issue on appeal is whether the trial court erred, as a matter of law, in designating the Tri-Valley Herald a newspaper of general circulation in the City of Pleasanton based on section 6008, subdivision (d). Appellant contends that the Tri-Valley Herald's Pleasanton office does not qualify as a principal office of publication under the statute because in terms of administration and control, writing, editorial and generally creating the newspaper, the principal office of publication is either Hayward or Livermore. We disagree.
(1a) The issue is one of first impression for this court. It turns on the interpretation of section 6008, subdivision (d), and the words "principal office of publication." The words themselves do not give us the answer. Accordingly, we look elsewhere for guidance, keeping in mind that our primary function is to ascertain the intent of the Legislature in enacting the statute so as to effectuate the purpose of the law. (See Hogya v. Superior Court (1977) 75 Cal. App.3d 122 [142 Cal. Rptr. 325].)
Preliminarily, we note the Legislature's historical purpose in regulating the type of newspaper which can publish legal notices. As stated by our Supreme Court: "The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a public nature for their general welfare. It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a *870 substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required. At least, it is not unreasonable to expect the citizens of a particular community to rely upon their local newspaper primarily to inform them of the proceedings of their own local officers and the affairs of local public importance. No doubt it is on this theory that the legislature has seen fit to require such official advertising to be done only in newspapers of general circulation, both printed and published in the place where such notices are given or made." (Application of Monrovia Evening Post (1926) 199 Cal. 263, 269 [248 P. 1017].) As later restated by the court, the purpose of the law restricting publication of official notices to newspapers qualifying as "newspapers of general circulation" is "to assure that the published material will come to the attention of a substantial number of persons in the area affected...." (In re Norwalk Call (1964) 62 Cal.2d 185, 190 [41 Cal. Rptr. 666, 397 P.2d 426].)
Next, we turn to the legislative history behind section 6008 and subdivision (d), in particular. As early as 1905, a newspaper had to be adjudicated a "newspaper of general circulation" in order to qualify to carry legal notices. At that time, this meant meeting the requirements of Political Code section 4460 which called for a newspaper which is: "... published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement." (Italics added.)
In 1923, the Legislature clarified some of the language in Political Code section 4460 by indicating that the terms "printed" and "published" refer to two separate functions. It added section 4463 to the Political Code providing that "... The word `printed,' as used in ... section [4460] shall mean, and be construed to mean, that the mechanical work of producing such a newspaper of general circulation, that is to say, the work of type-setting and impressing types on paper, shall have been performed during the whole of the period as designated and required by said section. The word `published,' as used in said section, shall mean, and be construed to mean, that such a newspaper of general circulation shall have been issued from the place where it is printed. ..." (Italics added.)
Political Code section 4463 was later interpreted by our Supreme Court to mean that a newspaper is "published" at the town, city or place where *871 it is printed and issued. (See Application of Monrovia Evening Post, supra, 199 Cal. 263.)
In 1943, the provisions of sections 4460 and 4463 of the Political Code were incorporated into the Government Code under sections 6000-6005. The general requirements statute, Political Code section 4460, became Government Code section 6000 which repeated the same language.
In 1951, section 6004.5 was added which codified the Supreme Court's holding in Application of Monrovia Evening Post, supra, that, for purposes of meeting section 6000 requirements, a newspaper is "published" at the place where it is both printed and issued.
(2a) It wasn't until 1974 that the Legislature added the subject statute, section 6008, to the statutory scheme. In enacting section 6008, the Legislature indicated that its purpose was to provide "alternative criteria" to those in section 6000 for qualifying a newspaper as a newspaper of general circulation. (See Legis. Counsel's Dig. of Sen. Bill No. 1583 (1973-1974 Reg. Sess.).) What this set of alternative criteria boiled down to was a relaxation of the section 6000 requirement that the petitioning newspaper be both printed and published in the same place. The Legislature accomplished this by dropping the "printed" requirement from the statement of qualifications and by redefining the term "published" for purposes of section 6008. Under section 6008, "published" means "issued from the place where the newspaper is sold to or circulated among the people and its subscribers...." (Italics added.) For purposes of this statute, it no longer matters where the newspaper is actually printed.
While relaxing the "published" requirement however, the Legislature added some additional qualifications to section 6008 which are not found in section 6000. This includes the requirement that: the newspaper be published at regular intervals of not less than weekly (§ 6008, subd. (a)); the newspaper have been published for at least three years preceding the date of adjudication (§ 6008, subd. (a)); the newspaper have a "substantial distribution" to paid subscribers in the jurisdiction in which it is seeking adjudication (§ 6008, subd. (b)); the newspaper have maintained a minimum coverage of local or telegraphic news of not less than 25 percent of its total inches during each year of the three-year period (§ 6008, subd. (c)); and the newspaper have only one principal office of publication and that office be in the jurisdiction for which the newspaper is seeking adjudication (§ 6008, subd. (d)).
It is clear from this that in enacting section 6008, the Legislature intended, on one hand, to retain strict standards for qualifying a newspaper as a newspaper *872 of general circulation for purposes of publishing legal notices while, on the other hand, as the trial court put it, recognize "the modern day mechanics of news dissemination." Tremendous advances in technology over the years and the development of big, highly competitive newspaper chains, have led to today's newspaper being more often than not an intercity publication with certain operations (such as printing and publishing) occurring at different locations. With the enactment of section 6008, the Legislature recognized this and additionally recognized that the purpose of the laws regulating the publication of legal notices, i.e., "to assure that the published [legal] material will come to the attention of a substantial number of persons in the area affected" will at times be best served by publication in such a newspaper.
(3) Although the Legislature does not define the term "office of publication" for us, it does define the term "published." Section 6008, subdivision (2), states that the word "published" as used in the statute, "means issued from the place where the newspaper is sold to or circulated among the people and its subscribers...." (Italics added.) "Publication" and "published" are both derivatives of the verb "to publish." Webster's New Collegiate Dictionary defines "publication" as "the act or process of publishing." It is reasonable to assume that the Legislature intended both terms to share a similar meaning. It cannot be said, as appellant would have us say, that "publication" means issuance from the place where newsgathering, writing, and editing takes place while "published" means simply issuance from the place where the newspaper is either sold or circulated. There is nothing to indicate that the Legislature intended such a construction.
(4) As a rule, "[t]he intention of the legislature must be determined from the language of the statute. [Citation.] `It is well settled that a legislative body has the power within reasonable limitations to prescribe legal definitions of its own language, and when an act passed by it embodies a definition it is binding on the courts.' [Citation.] ... [¶] `Terms defined by the statute in which they are found will be presumed to have been used in the sense of the definition, and will be construed accordingly.'" (Application of Monrovia Evening Post, supra, 199 Cal. at pp. 269-270.)
(1b) With this in mind, we discern no error in the instant case on the part of the trial court in finding the Tri-Valley Herald to be a newspaper of general circulation in the City of Pleasanton. This is, in the words of the statute, the place from which the newspaper is "sold to or circulated among the people...." Its "principal office of publication" is thus in Pleasanton. (2b) Such a finding, we note, is in keeping with the Legislature's objective of bringing official notices to the attention of a "substantial" number of *873 persons. Evidence was received that the Tri-Valley Herald has a greater circulation in Pleasanton than its rival, the Valley Times (the newspaper owned by appellant). Additionally, the Tri-Valley Herald publishes seven days a week while its rival publishes only five days a week.
Judgment is affirmed.
White, P.J., and Scott, J., concurred.
NOTES
[1] All statutory references are to the Government Code unless otherwise indicated.
[2] Section 6040 states that: "[W]henever any official advertising, notice, resolution, order or other matter of any nature whatsoever is required by law to be published in a newspaper, such publication shall be made only in a newspaper of general circulation."