[No. D014807. Fourth Dist., Div. One. June 25, 1992.]

DONNA MEDEIROS, Petitioner and Respondent, v.
SOUTH COAST NEWSPAPERS, Objector and Appellant.

**COUNSEL**

Hillyer & Irwin, Robin M. Stemen and James E. Drummond for Objector and Appellant.

William N. Sauer, Jr., for Petitioner and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—Donna Medeiros successfully petitioned the superior court to have the Oceanside Breeze established as a newspaper of general circulation for the City of Oceanside (Gov. Code,[1] §§ 6008, 6023). Objector South Coast Newspapers doing business as the Blade Citizen (South Coast) appeals, contending the court erred in finding the Oceanside Breeze had a bona fide subscription list of paying subscribers and a substantial distribution to paid subscribers in the City of Oceanside as required by section 6008.[2] We reverse and remand.

## DISCUSSION

Section 6008 states in pertinent part:

"Notwithstanding any provision of law to the contrary, a newspaper is a 'newspaper of general circulation' if it meets the following criteria:

"(a) It is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers and has been established and published at regular intervals of not less than weekly in the city, district, or

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] South Coast conceded below the only issue was whether there was a substantial distribution to paid subscribers. We therefore do not discuss the issue of a bona fide list of paying subscribers.

judicial district for which it is seeking adjudication for at least three years preceding the date of adjudication.

"(b)  It has a substantial distribution to paid subscribers in the city, district, or judicial district in which it is seeking adjudication.

"(c)  It has maintained a minimum coverage of local or telegraphic news and intelligence of a general character of not less than 25 percent of its total inches during each year of the three-year period.

"(d)  It has only one principal office of publication and that office is in the city, district, or judicial district for which it is seeking adjudication."

In *In re Carson Bulletin* (1978) 85 Cal.App.3d 785 [149 Cal.Rptr. 764], the newspaper in question had 12 paid subscribers in a city with a population of about 79,000. (*Id.* at p. 789.) The reviewing court concluded it did not have a substantial distribution to paid subscribers as required by section 6008. (*Id.* at p. 790.) The court stated:

"The term 'substantial' in the context of distribution to paid subscribers may be made reasonably certain by reference to other definable sources. The unabridged version of the Random House Dictionary of the English Language (1966) page 1418, gives as its first and primary definition of 'substantial' that it is something 'of ample or considerable amount, quantity, size, etc.' Similarly, in common legal usage, the term 'substantial' has been defined as '"important" or "material"' [citation] and 'considerable amount or value in opposition to that which is inconsequential or small' [citations].

"We recognize that the phrase 'substantial distribution to paid subscribers' is a relative phrase. It is, however, apparent that a paid distribution to 12 persons in a city of 79,000 persons, less than two-hundredths of 1 percent (0.02 percent) of the local population, could not be deemed 'substantial' under the foregoing definitions in view of the purpose of the law to limit publication of official notices to newspapers meeting certain standards in order 'to assure that the published material will come to the attention of a substantial number of persons in the area affected' [citation]." (85 Cal.App.3d at p. 795, fn. omitted.)

*Carson* is apparently the only case concerning section 6008's requirement of substantial distribution to paid subscribers.

Section 6008 was enacted in 1974 as an alternative to section 6000.[3] (*In re Carson Bulletin, supra,* 85 Cal.App.3d at p. 792; *In re Tri-Valley Herald* (1985) 169 Cal.App.3d 865, 871 [215 Cal.Rptr. 529].) Section 6000 omits

---

[3]*Section 6008 has never been amended.*

the criterion of a substantial distribution to paid subscribers. It requires, however, that the newspaper be printed in the city where it seeks adjudication,[4] and sets forth additional requirements. (*In re Carson Bulletin, supra*, 85 Cal.App.3d at pp. 791, fn. 2, 793; *In re Tri-Valley Herald, supra*, 169 Cal.App.3d at p. 871.) Section 6000 provides:

"A 'newspaper of general circulation' is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement."[5]

---

[4]There is no evidence in the record where the Oceanside Breeze is printed.

[5]Following is a brief review of some of the cases citing numbers in their discussions of bona fide subscription lists.

In *In re Herman* (1920) 183 Cal. 153 [191 P. 934], the Supreme Court reversed the trial court's judgment declaring the Daily Bulletin a newspaper of general circulation under the Political Code. (*Id.* at pp. 155, 165.) In so doing, the court stated: "[T]he legislature has not specified the number of subscribers required, and we must assume that it meant that the words 'bona fide' were to be taken 'according to their common acceptation.' [Citation.]" (*Id.* at p. 164, italics omitted.) The court declined to conclude there was no bona fide list of paid subscribers, citing evidence of 25 subscribers in various businesses and circulation in San Bernardino, Redlands, Colton, Rialto, Ontario, Highland, Victorville, Pomona, Los Angeles, and Riverside. (*In re Herman, supra*, 183 Cal. at p. 165.)

In *In re Simpson* (1923) 62 Cal.App. 549 [217 P. 789], the reviewing court held a population increase from about 12,000 to about 18,000 from 1913 to 1920 did not mean the newspaper had ceased to have a bona fide list of paid subscribers. (*Id.* at pp. 555-556.) The list apparently contained 197 subscribers. (*Id.* at p. 556.)

In *Baldwin v. Brown* (1924) 193 Cal. 345 [224 P. 462], the beneficiary under a trust deed appealed a judgment setting aside a trustee's sale. (*Id.* at pp. 346-347.) The Supreme Court held: "The mere fact that its circulation was small, amounting to only about 180 issues daily in a city of 16,000 inhabitants, would not of itself, in our opinion, suffice to exclude it from the designation of a 'newspaper,' nor of such a newspaper as might properly be the medium for such publicity of the notice of sale as the trust deed required." (*Id.* at p. 352.)

In *In re Hancock* (1949) 92 Cal.App.2d 481 [207 P.2d 61], the reviewing court affirmed an order declaring the Westmorland Mail and the Imperial Valley Democrat newspapers of general circulation under Political Code section 4460, the precursor to section 6000. (At pp. 482-483.) Concerning the former paper, the population of Westmorland was about 1,500 with a rural population of about 4,500; there were over 500 paid subscribers but the number was reduced due to a paper shortage. (*Id.* at pp. 487.) The Court of Appeal concluded there was sufficient evidence the newspaper had a bona fide subscription list of paying subscribers. (*Id.* at p. 488.) Concerning the Imperial Valley Democrat, the City of Brawley had a population of 13,000; the population of the surrounding territory was about 55,000; and there was evidence of 4,111 paid subscribers. (*Id.* at pp. 489-490.) The reviewing court held the trial court properly concluded the objector had not met the burden of showing the newspaper had ceased to be one of general circulation. (*Id.* at p. 490.)

In *In re Paradise News Press* (1957) 151 Cal.App.2d 496 [311 P.2d 555], there was a paid subscription list of 254 out of a circulation of about 3,200. (*Id.* at pp. 497, 499.) The area

■ We must consider whether the trial court erred as a matter of law in finding the Oceanside Breeze had a substantial distribution to paid subscribers under section 6008, subdivision (b). (*In re Tri-Valley Herald, supra,* 169 Cal.App.3d at p. 867.) The ratio of paying subscribers to inhabitants of Oceanside is 1,898 to 128,398, or about 1.48 percent.[6] Medeiros asserts this ratio should be increased by including newsstand sales in the number of paying subscribers. We disagree. The Senate bill giving rise to section 6008 initially required only " 'a substantial distribution in the area in which it is sold or distributed.' " (*In re Carson Bulletin, supra,* 85 Cal.App.3d at p. 793, citing Sen. Bill No. 1583 (1973-1974 Reg. Sess.) § 1, subd. (b).) This definition might be interpreted as including newsstand sales. However, the Senate changed the phrase to "a substantial distribution to paid subscribers in the area in which it is seeking adjudication."[7] (*In re Carson Bulletin, supra,* 85 Cal.App.3d at p. 793, italics omitted.) This phrase cannot be reasonably construed as including newsstand sales. In view of this pre-enactment amendment, it is evident the legislature did not intend to include newsstand sales in the substantial distribution requirement. This interpretation of the statute leads to a increased chance affected persons will receive notice of important legal events, thus furthering the legislative purpose.

Given the legislative concern that the persons who are to receive legal notices be likely to read the newspapers publishing those notices, on this record we cannot say a subscriber to population ratio of approximately 1.48 percent amounts to a substantial distribution to paid subscribers as required by section 6008. Standing alone, 1.48 percent is too small a number to be declared to be substantial, nor can we say definitively that it is insubstantial

---

containing 206 of the subscribers had a population of about 10,000 to 12,000. (*Id.* at p. 497.) The reviewing court rejected the contention there was no bona fide list of paid subscribers. (*Id.* at p. 499.)

[6]Medeiros discusses the number of households in Oceanside as well as the population. We believe the relevant standard is population rather than the number of households.

The court below took judicial notice of petitions, declarations, and 1977 judgments in cases declaring the Del Mar Surfcomber a newspaper of general circulation under section 6008 for the City of Del Mar, and declaring the Del Mar News Press a newspaper of general circulation under section 6000. The Surfcomber had 1,132 paid subscribers in the Del Mar community (541 in the city of Del Mar and 591 in San Diego County) out of 4,743 households served by the Del Mar post office, a subscriber to household ratio of 23.87 percent. The record contains no information concerning the population of the relevant area.

As the Del Mar News Press qualified under section 6000 there was no requirement of a substantial distribution to paid subscribers. It had a bona fide list of paying subscribers of 500 in San Diego and elsewhere outside the city. In 1979, the Del Mar News Press filed an amended petition under section 6008. The copy in the record of the judgment on the petition is unsigned and bears no file stamp.

[7]"A later amendment by the Assembly further qualified this to list the specific jurisdictions, such as the city in which it is seeking adjudication." (*In re Carson Bulletin, supra,* 85 Cal.App.3d at p. 793, fn. 3, citing Assem. Amend. to Sen. Bill No. 1583 (1973-1974 Reg. Sess.) Apr. 29, 1974.)

because there is little to which it can be compared. While 1.48 percent is not large, it may be substantial if other newspapers in the area have similar percentages of the population as paid subscribers. We therefore remand so that Medeiros may, if she wishes, introduce evidence of the paid subscribership ratios of other newspapers in the county which qualify under section 6008.

### DISPOSITION

Judgment reversed and case remanded for further proceedings consistent with this opinion. Each party to bear its own casts.

Froehlich, J., and Nares, J., concurred.