[No. D020191. Fourth Dist., Div. One. Nov. 16, 1995.]

In re Establishment of SAN DIEGO COMMERCE as a Newspaper of General Circulation.
SAN DIEGO COMMERCE, Petitioner and Respondent, v.
SAN DIEGO DAILY TRANSCRIPT, Contestant and Appellant.

**COUNSEL**

Gray, Carey, Ware & Freidenrich, John Allcock, Terri P. Durham and Guylyn R. Cummins for Contestant and Appellant.

Post, Kirby, Noonan & Sweat and Michael L. Kirby for Petitioner and Respondent.

**OPINION**

**NARES, J.**—The San Diego Daily Transcript (Transcript) appeals from a judgment in favor of respondent San Diego Commerce (Commerce), rejecting Transcript's efforts to have Commerce's adjudication as a newspaper of general circulation set aside. Transcript contends (as it did below) that in order for Commerce to qualify as a newspaper of general circulation under

Government Code section 6000, Commerce must have a substantial distribution. While Transcript concedes the statute's words contain no such language, Transcript argues that constitutional grounds (never urged below) require us to imply such language. We reject this argument for the reasons set out below, and affirm the judgment.

## FACTS[1] AND PROCEDURE

Government Code[2] section 6027 provides that any newspaper shall not be deemed to be one of "general circulation" unless it first obtains a judicial decree to that effect, which may be done after the newspaper demonstrates that it is in compliance with the relevant code sections.

In 1991, a newspaper known as the Ad Sheet was adjudicated to be one of general circulation pursuant to section 6000.[3] In December of that year, the adjudication was modified to reflect the fact that there had been a name change from the Ad Sheet to San Diego Commerce.

In 1993, Commerce filed an application for adjudication as a newspaper of general circulation under section 6008, which would allow printing the newspaper offsite.[4] This application was opposed by Transcript on the grounds that the paid subscriptions to Commerce were "too small in number to meet the legislative requirement that legal notices be published by a newspaper of substantial distribution." Commerce thereafter withdrew the section 6008 application.

In connection with the opposition to Commerce's section 6008 application, Transcript also filed a motion, pursuant to section 6024, subdivision (1), with exhibits and points and authorities, to set aside the prior section 6000 adjudication that Commerce was a newspaper of general circulation.

There followed extensive filings on the issues which were raised by Transcript's motion. After considering the matter, the trial court issued a tentative ruling that Commerce "does not appear to be a newspaper of general circulation, in my judgment, under 6008 or [6000] . . . . I don't think it is a newspaper of substantial circulation."

Commerce thereafter filed a motion for reconsideration, and upon granting such reconsideration, and after hearing arguments of the parties, the trial

---

[1] The facts are not in dispute on this appeal.

[2] Subsequent statutory references are to the Government Code unless otherwise specified.

[3] The text of this statute appears *post*, in the Discussion.

[4] The text of this statute appears, *post*, in the Discussion.

court held: "[T]here is no requirement that a newspaper printed and published in a local county have a 'substantial distribution' of paid subscribers. It is sufficient that the newspaper adjudicated a newspaper of general [circulation] pursuant to Government Code section 6000 have a 'bona fide' subscription list. This Court will take judicial notice of the current list of paid subscribers to the San Diego Commerce is in excess of 300 . . . . [¶] In view of the absence of a requirement of a 'substantial distribution' for local papers in section 6000 of the Government Code, the Court[] reverses its previous Order vacating the determination that the San Diego Commerce is a paper of general [circulation] . . . ." Judgment was thereafter entered for Commerce.

Transcript now appeals from the judgment. In light of the fact Commerce withdrew the section 6008 application, the resolution of the section 6000 challenge is the only matter here at issue.

### DISCUSSION

1. *Statutory and Case Law Background*

Section 6000 (Stats. 1943, ch. 134, p. 987, formerly Pol. Code, § 4460, added by Stats. 1905, ch. 345, p. 407) provides: "A 'newspaper of general circulation' is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising it to be given or made for at least one year preceding the date of the publication, notice or advertisement."[5]

Section 6008 provides in pertinent part: "Notwithstanding any provision of law to the contrary, a newspaper is a 'newspaper of general circulation' if it meets the following criteria:

"(a) It is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide

---

[5]The term "bona fide subscription list" (used in former Pol. Code, § 4460, Stats. 1905, ch. 345, p. 407) and continued in section 6000 (enacted by Stats. 1943, ch. 134, p. 987) was construed 75 years ago to mean "a real, actual, genuine subscription list which shall contain only the names of those who are in good faith paying regularly for their subscriptions." (*In re Herman* (1920) 183 Cal. 153, 164 [191 P. 934].) While in that case it was urged the term should be construed to have a numerical import (" 'a sufficient number of persons in a city or county to constitute an adequate medium for public advertising' " (*ibid.*), our Supreme Court there rejected the argument, noting that "the legislature has not specified the number of subscribers required." (*Ibid.*)

subscription list of paying subscribers and has been established and published at regular intervals of not less than weekly in the city, district or judicial district for which it is seeking adjudication for at least three years preceding the date of adjudication.

"(b) It has a substantial distribution to paid subscribers in the city, district, or judicial district in which it is seeking adjudication.

"(c) It has maintained a minimum coverage of local or telegraphic news and intelligence of a general character of not less than 25 per cent of its total inches during each year of the three-year period.

"(d) It has only one principal office of publication and that office is in the city, district, or judicial district for which it is seeking adjudication."

As we stated in *Medeiros* v. *South Coast Newspapers* (1992) 7 Cal.App.4th 982, 984-985 [9 Cal.Rptr.2d 291]: "Section 6008 was enacted in 1974 as an alternative to Section 6000. (*In re Carson Bulletin* [1978] 85 Cal.App.3d [785,] 792 [149 Cal.Rptr.764]; *In re Tri-Valley Herald* (1985) 169 Cal.App.3d 865, 871 [215 Cal.Rptr. 529].) *Section 6000 omits the criterion of a substantial distribution to paid subscribers.* It requires, however, that the newspaper be printed in the city where it seeks adjudication, and sets forth additional requirements. (*In re Carson Bulletin, supra,* 85 Cal.App.3d at pp. 791, fn. 2, 793; *In re Tri-Valley Herald, supra,* 169 Cal.App.3d at p. 871.)" (Italics added, fns. omitted.)[6]

Our decision in *Medeiros* v. *South Coast Newspapers, supra,* 7 Cal.App.4th 982 reviewed *only* the peculiar-to-section-6008 requirement that a newspaper have "substantial distribution to paid subscribers" to qualify as a newspaper of general circulation. (7 Cal.App.4th at p. 983, fn. 2.) **(1a)** Transcript now argues that we must imply a similar need for a "substantial distribution to paid subscribers" to support any trial court finding that a newspaper qualifies as one of general circulation under section 6000.

Transcript urges that (a) case authority from our Supreme Court requires such an implied requirement be read into section 6000; (b) due process also

---

[6]We also in that case observed in a footnote concerning the Del Mar Press News that because that newspaper had "qualified under section 6000 *there was no requirement of a substantial distribution* to paid subscribers. [The Del Mar Press News] had a bona fide list of paying subscribers of 500 in San Diego and elsewhere outside the city." (*Medeiros* v. *South Coast Newspapers, supra,* 7 Cal.App.4th at p. 986, fn. 6, italics added.)

At relevant times during the proceedings below Commerce had about 300 paying subscribers. Transcript claimed to have about 10,000 paying subscribers, "or approximately 1 percent of the City of San Diego."

requires such an implication be read into the statute; and (c) various statutes require us to apply the suggested implication to the statute at issue. For the reasons which follow, we must decline to reinterpret or construe section 6000 as Transcript urges.

### 2. Case Authority for Implying "Substantial Distribution"

Transcript cites us to two California Supreme Court cases in support of the proposition we must read into section 6000 an unstated "substantial distribution" requirement. The first case, *Application of Monrovia Evening Post* (1926) 199 Cal. 263, 269 [248 P. 1017], notes: "The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a public nature for their general welfare. It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required."[7]

Transcript next cites us to *In re Norwalk Call* (1964) 62 Cal.2d 185, 190 [41 Cal.Rptr. 666, 397 P.2d 426], which case observes: "The purpose of limiting publication to newspapers meeting certain standards is to assure that the published material will come to the attention of a substantial number of persons in the area affected . . . ."

The central problem with citation to these authorities is that (as Transcript fails to state) neither of the cited cases concerned whether a "substantial distribution" requirement should be read into a statute which did not state such a requirement, thus rendering these citations without precedential value.

*Application of Monrovia Evening Post* was a case which involved *only* the question of whether a newspaper printed in Pasadena could qualify under a predecessor of section 6000 as one of general circulation for the city of Monrovia. (*Application of Monrovia Evening Post, supra,* 199 Cal. at pp. 264-267.)

*In re Norwalk Call* presented the issue *only* of the extent to which a "grandfather clause" enacted in 1923, modified in 1951, and restored to its original form in 1961, was available to an applicant newspaper. (*In re Norwalk Call, supra,* 62 Cal.2d at p. 187.) The remarks cited by Transcript are thus only dicta, and "a decision is not authority for propositions not

---

[7]This case construed section 6000's predecessor, former Political Code section 4460. See footnote 5, *ante.*

considered . . . ." (*People* v. *Toro* (1989) 47 Cal.3d 966, 978, fn. 7 [254 Cal.Rptr. 811, 766 P.2d 577] (lead opn. of Kaufman, J.).)

As the author of the majority opinion in *In re Norwalk Call*, Justice Mosk, noted elsewhere, we should not "violate the axiom that cases are not authority for propositions not considered therein.. (*People v Toro* (1989) 47 Cal.3d 966, 978, fn. 7 [254 Cal.Rptr. 811, 766 P.2d 577]; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)" (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 415 [14 Cal.Rptr.2d 470, 841 P.2d 990] (conc. and dis. opn. of Mosk, J.); see also the opinion of a unanimous court in *In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553], and cases cited therein.)

In other words, there is no case authority *whatsoever* for the proposition urged upon us by Transcript, that sections 6000 and 6008 must despite their differing language be read to contain the same "substantial distribution" requirement. What Transcript truly requests is for this intermediate appellate court to engage in judicial amendment of a legislative act, because such an act is, in the view of Transcript, necessary to achieve harmony with some underlying "policy." Such judicial actions have been often criticized by appellate courts themselves.

■ "We have no general power to rewrite statutes to conform to some underlying 'policy.' As a rule, there can be no intent in a statute not expressed in its words; the intention of the Legislature must be determined from the language of the statute." (*Woodland Joint Unified School Dist.* v. *Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1451 [4 Cal.Rptr.2d 227]; see also *San Diego Service Authority for Freeway Emergencies* v. *Superior Court* (1988) 198 Cal.App.3d 1466, 1472 [244 Cal.Rptr. 440].)[8]

3. *Constitutional Due Process*

■ Transcript next urges that in this case "[s]tate and federal constitutional due process requirements also mandate [reading into section 6000 the suggested requirement]." Not so.

The heart of this argument is that unless we judicially amend section 6000 as Transcript urges, some unspecified persons will be deprived of due process by reason of the inadequacy of the notice they will receive, insofar as legal advertisements placed in Commerce, it is argued, will not effectively reach the parties to whom they are directed. There are several reasons why we must reject these assertions.

---

[8]We return to this point in part 4, *post.*

The first point is this is an argument for the Legislature, not the courts, to consider, unless and until such time as there is an identified person who is deprived of an identified right. Pending such occasion, the point is without merit, as we decline to offer advisory opinions on matters which are neither ripe for adjudication nor in any event properly before us.[9]

The second point is that even were the constitutional arguments properly before us, as we dispose of the matter purely on statutory grounds, "[c]onsideration of the constitutional [issues] would be particularly inappropriate, since constitutional issues are to be avoided when a case can be decided on other grounds. [Citations.]" (*Reed* v. *City and County of San Francisco* (1992) 10 Cal.App.4th 572, 575 [12 Cal.Rptr.2d 647].) That observation applies equally to this case.

4.  *Other Statutes/Legislative History*

Transcript last argues[10] that for a variety of reasons culled from a wide variety of statutes and other source materials, we must imply the cited "substantial distribution" requirement in construing section 6000. ■ But our primary guide in construing any statute is that we must " 'turn[] first to the words [of the statute] themselves for the answer.' " (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)

"If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) ■ Here, the words of the statutes set out above are "clear and unambiguous," and in accord with not only the principles of statutory construction and precedent, but also in accord with those "clear and unambiguous" words, we thus decline to consider the other-statute and

---

[9]Transcript has neglected to point out where, in a voluminous record, this contention was urged below. "The statement of any matter in the record shall be supported by appropriate reference to the record." (Cal. Rules of Court, rule 15(a).) We thus will accept Commerce's representation such arguments were *not* in fact made below. For this reason also we will must reject the point urged by Transcript.

[10]Transcript also argues that "[t]he marketplace does not function to eradicate the problem of newspapers with small or insignificant circulations obtaining adjudications" and "the market comparison test set forth in *Medeiros* provides the best standard for determining whether a newspaper's paid circulation in the jurisdiction provides an adequate base for publishing legal notices." These are, however, points properly addressed to the Legislature, rather than to this court.

legislative intent arguments offered here by Transcript.[11] The words of the statutes herein require no interpretation, nor permit the offered implication.

5. *Summary*

In this matter, Transcript seeks on a variety of grounds to have the plain language of the statute in question, Government Code section 6000, reinterpreted so as to add matters not placed therein by the Legislature. In pursuit of this goal, Transcript advances many and varied points concerning the supposed dangers which follow from reading the statute as it is.

Nothing, however, is more fundamental than the division of powers among the Legislature, the judiciary, and the executive branch. It is the business of the Legislature to draft laws, and the business of the judiciary to pass upon their meaning, but *not* to pass upon their wisdom.

Although neither party has cited the case to us, a recent decision from our Supreme Court disposes of Transcript's "policy" arguments. "It is not for us to substitute our public policy judgment for that of the Legislature. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 818 [274 Cal.Rptr. 820, 799 P.2d 1253].) If the Legislature is dissatisfied with the policy reflected in the current statutes, it can modify them at any time." (*Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154, 1165 [40 Cal.Rptr.2d 442, 892 P.2d 1185] (lead opn. of Arabian, J.).)

The arguments advanced by Transcript are not for us to resolve, were in substantial part not offered below, and we thus reject Transcript's assertions of error on this appeal.

DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Work, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 22, 1996.

---

[11]Both parties in fact discuss the legislative history, and there have been included in the record extensive materials on that history, but for the reasons set out above we do not resort to it.