[No. A117817. First Dist., Div. Five. July 31, 2008.]

In re Establishment of THE EUREKA REPORTER as a Newspaper of General Circulation.
JUDI POLLACE, Petitioner and Respondent, v.
TIMES-STANDARD, Contestant and Appellant.

892

## Counsel

Holme Roberts & Owen LLP; Roger Myers, Rachel Matteo-Boehm and Katherine Keating for Contestant and Appellant.

Mitchell, Brisso, Delaney & Vrieze; Russell S. Gans and William F. Mitchell for Petitioner and Respondent.

OPINION

**JONES, P. J.**—To qualify as a "newspaper of general circulation" pursuant to Government Code section 6000,[1] a newspaper must, among other things, have "a bona fide subscription list of paying subscribers." The Eureka Reporter (the Reporter) is a free newspaper, but a small percentage of its recipients contribute money to the Reporter to offset the cost of delivering it. The question before us is whether these recipients constitute a "bona fide subscription list of paying subscribers" within the meaning of section 6000. The answer is no. Our holding is consistent with the plain language of section 6000. Accordingly, we reverse the trial court's order adjudicating the Reporter a newspaper of general circulation pursuant to section 6000.

## FACTUAL AND PROCEDURAL BACKGROUND

Judi Pollace is the publisher of the Reporter, a locally owned newspaper established in 2004 and published in Humboldt County. In early 2007, she petitioned the trial court to declare the Reporter a newspaper of general circulation. (§ 6020.)[2] Her verified petition alleged, among other things, that the Reporter "has a bona fide subscription list of paying subscribers in Humboldt County and has an average daily circulation of 24,000." Pollace did not submit any evidence to support that allegation.

The Eureka Times-Standard (the Times-Standard) opposed the motion, claiming the Reporter—which it characterized as "a free newspaper that is distributed for no charge"—did not have a bona fide list of paying subscribers. The Times-Standard submitted the Reporter's "Publication Audit Report," a document prepared by the Circulation Verification Council using data provided by the Reporter, which showed the Reporter had no paid distribution and no paid circulation between April and September 2006.

In reply, Pollace conceded the Reporter "has been circulated and made available . . . at no cost" and that the Reporter "remains free at all our drop sites and rack locations throughout the county of Humboldt." Pollace, however, argued that participants in the Reporter's "Voluntary Pay Program" (the Program) constituted a bona fide list of paying subscribers. In a declaration, Pollace explained that the Reporter instituted the Program in July 2005 to "recover the cost and expense of home delivery." According to Pollace, the Reporter periodically inserts a letter in its newspaper asking

---

[1] Unless otherwise noted, all further statutory references are to the Government Code.

[2] Section 6020 provides: "Whenever a newspaper desires to have its standing as a newspaper of general circulation ascertained and established, it may, by its publisher, manager, editor or attorney, file a verified petition in the superior court of the county in which it is established, printed and published, setting forth the facts which justify such action."

readers to "sponsor" the newspaper in the amount of $15, $25, or $50 to "help cover the expense of home delivery." The letter states that readers who do not contribute will continue to receive home delivery "as a gift of [t]he . . . Reporter." Pollace's declaration attached a redacted list containing ZIP Codes which Pollace stated constituted 810 "separate and independent persons" who participated in the Program between January 2006 and February 2007.[3]

After a hearing, the court granted Pollace's petition. It concluded that the Program participants, "although having no obligation to do so, have paid for the receipt of the [Reporter]. The court believes this is sufficient to meet the statutory requirement of 'paying subscribers' particularly in light of the communities within Humboldt County wherein the funds have been generated." The court then entered a judgment establishing the Reporter as a newspaper of general circulation for Humboldt County.

The Times-Standard timely appealed from the judgment.

## DISCUSSION

■ Section 6000 defines a "newspaper of general circulation" as one "published for the dissemination of local or telegraphic news and intelligence of a general character, which has a *bona fide subscription list of paying subscribers,* and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement." (§ 6000, italics added.) "The impact of becoming a newspaper of general circulation . . . is significant" because certain legal notices—such as probate and foreclosure notices—"must . . . be published in a newspaper of general circulation . . . ." (*In re Molz* (2005) 127 Cal.App.4th 836, 838–839 [26 Cal.Rptr.3d 131]; see also § 6040 ["Whenever any official advertising, notice, resolution, order, or other matter of any nature whatsoever is required by law to be published in a newspaper, such publication shall be made only in a newspaper of general circulation."].)

---

[3] Over the Times-Standard's objection, the court allowed the Reporter to file the complete list, with the participants' names and addresses, under seal. On appeal, the Times-Standard states that the court granted the Reporter's application to seal the list without making the findings required by *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1217–1218 [86 Cal.Rptr.2d 778, 980 P.2d 337], and California Rules of Court, rule 5.220(d). Because the Times-Standard has not developed this assertion with any analysis and has not provided this court with the list that was filed under seal, the assertion is waived and we need not consider it. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 126 [36 Cal.Rptr.3d 6]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

■ Whether participants in the Program—i.e., those who contribute money to offset the cost of home delivery of the Reporter, a free newspaper—constitute a "bona fide subscription list of paying subscribers" under section 6000 is a question of statutory interpretation and is subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) "[W]e must attempt to effectuate the probable intent of the Legislature, as expressed through the actual words of the statutes in question. [Citations.] ' "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" [Citation.]' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858]; see also *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) "If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " (*People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778], quoting *People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176].)

■ We first consider whether the Program participants are "paying subscribers" under section 6000. Section 6000 does not define the term "paying subscriber," but in the publishing context, a "subscriber" is one who "contract[s] to receive and pay for a certain number of issues of a publication." (American Heritage Dict. (4th ed. 2000) p. 1726.) Another definition of "subscriber" is one who "receive[s] a periodical or service regularly on order." (Merriam-Webster's Collegiate Dict. (11th ed. 2004) p. 1244.) Pollace argues that Program participants are "paying subscribers" because they "paid to receive home delivery" of the Reporter. We disagree. There is no evidence in the record of the existence of a contract between the Reporter and the participants in the Program wherein the participants agree to pay for (and receive) a certain number of issues of the Reporter. Participants are not paying for a certain number of issues of the Reporter. They are, in the words of the Reporter, "contribut[ing] to help cover the expense of home delivery" in the form of a "[s]ponsorship[]." Indeed, a contribution is not required to receive home delivery of the Reporter: residents of Humboldt County who do not participate in the Program will receive the newspaper "as a gift of [t]he . . . Reporter." As a result, the Program participants do not constitute "paying subscribers" within the plain meaning of section 6000.

The Reporter's reliance on *In re San Diego Commerce* (1995) 40 Cal.App.4th 1229, 1234 [47 Cal.Rptr.2d 303] (*San Diego Commerce*), is misplaced. There, the San Diego Daily Transcript successfully petitioned to be declared a newspaper of general circulation pursuant to section 6000. A rival newspaper appealed, arguing that section 6000, like section 6008,

requires a newspaper to have a "substantial distribution" of paid subscribers.[4] (40 Cal.App.4th at p. 1233.) The Court of Appeal disagreed. It held that a newspaper can qualify as a newspaper of general circulation under section 6000 if it has a "bona fide subscription list of paying subscribers"—it need not have a "substantial distribution" of paying subscribers. (40 Cal.App.4th at pp. 1233–1234.) *San Diego Commerce* does not assist Pollace because it does not stand for the proposition that individuals who donate money to a free newspaper to offset the cost of home delivery (and who receive the newspaper regardless of whether they donate) are "paid subscribers" within the plain meaning of section 6000.

Next, we turn to the meaning of "subscription list." This term is not defined in section 6000, but a plain and commonsense meaning of "subscription" in the publishing context is "a purchase by prepayment of the future issues of a periodical usu[ally] for a fixed period (as [in] a year)." (Webster's 3d New Internat. Dict. (1981) p. 2278.) Another definition of "subscription" is "an arrangement for providing, receiving, or making use of something of a continuing or periodic nature on a prepayment plan: as [in] a purchase by prepayment for a certain number of issues (as of a periodical)." (Merriam-Webster's Collegiate Dict., *supra*, at pp. 1244–1245.) Thus, a "subscription" typically requires an individual to pay, in advance, for a certain number of issues of a periodical for a fixed period of time.[5] In return, the publisher obligates itself to provide the agreed upon issues of the periodical.

We conclude the list of ZIP Codes representing the Program participants does not constitute a "subscription list" under section 6000 for two reasons. First, the participants do not prepay or pay in advance before receiving the Reporter. The record demonstrates that those who elected to participate in the Program had received home delivery of the Reporter for at least three months before making a contribution. Second, the Program participants do not agree

---

[4] In 1974, the Legislature added section 6008 to the Government Code to provide an alternative to section 6000 for "qualifying a newspaper as a newspaper of general circulation." (*In re Tri-Valley Herald* (1985) 169 Cal.App.3d 865, 871–872 [215 Cal.Rptr. 529] (*Tri-Valley*); see *In re Carson Bulletin* (1978) 85 Cal.App.3d 785, 792 [149 Cal.Rptr. 764]; *Medeiros v. South Coast Newspapers* (1992) 7 Cal.App.4th 982, 984 [9 Cal.Rptr.2d 291] (*Medeiros*).) Section 6008 does not require the newspaper to be printed and published in the same place, but it sets forth additional requirements not found in section 6000. (*Tri-Valley, supra*, 169 Cal.App.3d at p. 871 [analyzing differences between §§ 6000 and 6008]; see also *Medeiros, supra*, 7 Cal.App.4th at p. 984.) For example, section 6008 requires a newspaper seeking adjudication as a newspaper of general circulation to have a "substantial distribution to paid subscribers in the city, district, or judicial district in which it is seeking adjudication." (§ 6008, subd. (b).) Both section 6000 and 6008, however, contain the requirement that the newspaper have a "bona fide subscription list of paying subscribers." (§§ 6000, 6008, subd. (a).)

[5] In dicta, one court noted that "[a] subscription by definition occurs over a period of time . . . ." (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 706 [24 Cal.Rptr.3d 351].)

to receive a certain number of issues of the Reporter over a fixed period of time. The Reporter's own evidence establishes that by participating in the Program, readers are not agreeing to anything—they are simply donating money to help the Reporter cover the cost of distributing the newspaper. For example, an individual who contributes $50 to the Reporter for a "Publisher's Sponsorship" will not receive more issues of the Reporter than an individual who contributes $15 for a "Reporter's Sponsorship." There is no relationship between the amount of the contribution and the number of issues received.

Nor does the list reflect individuals who are "paying regularly" to receive the newspaper as in *In re Herman* (1920) 183 Cal. 153, 164 [191 P. 934] (*Herman*). There, our high court considered whether The Daily Bulletin (Bulletin), a San Bernardino newspaper, qualified as a newspaper of general circulation under former Political Code section 4460, the predecessor to section 6000.[6] (*Herman, supra*, 183 Cal. at pp. 161–162.) The appellant contended, among other things, that the Bulletin did not have a "*bona fide* subscription list of paying subscribers" under former Political Code section 4460. (183 Cal. at p. 162, original italics.) The *Herman* court interpreted this phrase to mean "a real, actual, genuine subscription list which shall contain only the names of those who are in good faith paying regularly for their subscriptions." (*Id.* at p. 164.) Pollace cannot meet the *Herman* court's definition of "bona fide subscription list of paying subscribers" because the record is devoid of evidence that participants in the Program made "regular" payments to the Reporter.

■    The terms the Reporter uses to describe the Program to its readers are telling. The letter urges readers to "contribute" to the Reporter and to "sponsor" it "to help cover the expense of home delivery." And it describes the Program as "[v]oluntary." In this context, a voluntary contribution or sponsorship is not akin to a subscription, which obligates the customer to pay a sum of money before receiving a future issue of a periodical. A voluntary contribution or sponsorship is, in essence, a donation.

■    The Reporter urges us to overlook the fact that its own audit report lists the Reporter's "paid circulation" and "paid distribution" as "0%" by arguing that the plain meanings of "subscription" and "subscriber" are an inappropriate gauge of reader interest. Following the Reporter's logic, individuals who "voluntarily pay for a newspaper *after* it has been delivered to their homes free of charge" (original italics) are more likely to read it. This may be true, but it has no bearing on whether the newspaper can qualify as a

---

[6] The Legislature enacted former Political Code section 4460 in 1905. (Stats. 1905, ch. 345, § 1, pp. 406, 407.) In 1943, the Legislature replaced former Political Code section 4460, without modifications, with Government Code section 6000. (*San Diego Commerce, supra*, 40 Cal.App.4th at p. 1232 & fn. 5.)

newspaper of general circulation pursuant to section 6000. In essence, the Reporter urges us to rewrite the statute to substitute for the prerequisite of "paying subscribers" a different test: whether a person or entity supports a publication's continued viability through a monetary contribution. We decline to rewrite the statute. Section 6000's test is whether the newspaper has a "bona fide subscription list of paying subscribers." (See, e.g., *In re La Opinion* (1970) 10 Cal.App.3d 1012, 1015 [89 Cal.Rptr. 404] [newspaper with a paid circulation "in excess of 15,000 including 2,900 regular subscribers" had a bona fide list of paying subscribers under § 6000]; *In re the Santa Ana Independent* (1946) 75 Cal.App.2d 764, 765 [171 P.2d 548] [trial court properly concluded newspaper had a bona fide list of paying subscribers where the newspaper's publisher testified there were approximately 2,500 subscribers who paid 10 cents each month to receive the newspaper].) Whether individuals who donate money to a free newspaper are more likely to read that newspaper is not the appropriate inquiry.

Pollace urges us to adopt the reasoning from *Dunham v. Clayton* (Iowa Ct.App. 1991) 470 N.W.2d 362, 365 (*Dunham*). There, the trial court designated The Brooklyn Paper as the "official newspaper" for Poweshiek County because it had the most subscriptions. (*Id.* at p. 363.) The Iowa Court of Appeals reversed and held that a recipient of a business gift subscription constituted a bona fide subscriber under an Iowa statute only if the recipient showed "some affirmative assent" to the subscription. (*Id.* at p. 366, italics omitted.) It concluded that a mere failure to refuse the subscription did not demonstrate affirmative assent. (*Ibid.*)

■ Pollace's reliance on *Dunham* is puzzling for several reasons. First, *Dunham* did not interpret section 6000, the statute at issue here. Instead, the court applied an Iowa statute with a specific definition of "bona fide" subscriber. Second, the case is factually distinguishable. In that case, a local bank purchased subscriptions to The Brooklyn Paper and gave them away as part of a business promotion. Here, there are no subscriptions and there are no subscribers: the Program participants did not order a specific number of issues of the Reporter, nor did they pay to receive those issues. Finally—and as Pollace admits—we are not bound by out-of-state authority.

■ We conclude that individuals who participate in the Program and contribute money to the Reporter to offset the cost of home delivery are not "paying subscribers" within the meaning of section 6000. Similarly, we conclude that the list of these participants does not constitute a "subscription list" under section 6000. As a result, we need not consider the Times-Standard's alternate argument that the Reporter's list of ZIP Codes representing the Program participants is not "bona fide."

## DISPOSITION

The judgment establishing the Reporter as a newspaper of general circulation pursuant to section 6000 is reversed. The court is ordered to enter a new judgment denying Pollace's petition to ascertain the Reporter as a newspaper of general circulation. The Times-Standard is awarded its costs on appeal.

Needham, J., and Reardon, J.,[*] concurred.

---

[*]Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.