NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JONATHAN STEIN, et al., *Plaintiffs/Appellees*,

*v.*

JACKIE A. MECK, et al., *Defendants/Appellants*.

No. 1 CA-CV 20-0263
FILED 2-9-2021

Appeal from the Superior Court in Maricopa County
No. CV2019-006142
The Honorable Rosa Mroz, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

COUNSEL

Gust Rosenfeld PLC, Phoenix
By Richard B. Hood, J.T. Shoaf
*Counsel for Defendants/Appellants*

Timothy A. LaSota PLC, Phoenix
By Timothy A. LaSota
*Counsel for Plaintiffs/Appellees*

---

## MEMORANDUM DECISION

Judge Maurice Portley[1] delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Jennifer M. Perkins joined.

---

**P O R T L E Y**, Judge:

**¶1** The Mayor of the City of Buckeye, Arizona, Jackie A. Meck, the named city council members and the City of Buckeye (collectively, the "City") appeal the summary judgment granted to The Buckeye Star Newspaper, Inc. and Jonathan Stein, its owner (collectively, the "Star"). The City challenges the judgment requiring it to grant the newspaper preferential treatment and award it the 2018 contract to publish legal notices for the City pursuant to A.R.S. § 39-204(C)(3). Specifically, the City contends that the Star, a weekly newspaper of general circulation ("newspaper"), did not indicate in its response to the City's 2018 Request for Proposal ("RFP") that the newspaper was printed "within the territorial limits [of the City]." *See* A.R.S. §§ 39-201 and -204(A), (B)(1), (C)(3).

**¶2** The appeal requires us to resolve two issues. First, did the superior court err by determining that the Star did not need to print all of its newspapers within the City? Second, if the court did not err in its statutory analysis, is there a genuine issue of fact that precludes summary judgement for the Star?

**¶3** We agree with the court's interpretation of the "printed" requirement in A.R.S. § 39-204(C)(3). However, there remains a genuine issue of material fact of whether the Star apprised the City, in its response to the RFP, that it was printing copies of its newspapers of general circulation within the City's limits. Accordingly, we reverse the entry of summary judgment in part and remand this case back to the court for the reasons stated below.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

**FACTS AND PROCEDURAL BACKGROUND**

**¶4** At the end of August 2018, the Star terminated its existing contract with the City to publish legal notices in its newspaper because the City refused to agree to pay increased rates, including for publishing public notices.

**¶5** In October 2018, the City issued a RFP for the publication of legal notices it was required by law to have "printed and published" in an Arizona newspaper of general circulation. *See* A.R.S. §§ 9-812, 39-204(A), (C)(3). The Star submitted a proposal, as did *The Arizona Republic*. The Star's proposal indicated that its newspaper had been published in the City since 2010 but stated the following, in relevant part, about printing and circulation:

> The Buckeye Star does a portion of in house printing for newsprints, we also print the majority of the newspapers at our subcontractors print facility in Tempe Az.
>
> . . . .
>
> The Buckeye Star circulation system includes direct mail for subscribers, City Residents, and businesses, with subscriptions. . . . The Buckeye Star's circulation is 5,000 issues per week, with a total of 20,000 issues per month.
>
> . . . .
>
> We also have *the ability* to print short runs of our publication in house within the territorial limits of Buckeye Arizona. *This* ensures The Buckeye Star never runs out of newspapers, and *allows us to meet the A.R.S. Statutes to actually print and publish within the City Limits*.
>
> The Buckeye Star uses Adobe InDesign which is a commercial grade publishing software program for the creation of pre-printed files of PDF's. . . .
>
> Once the files and pages are proofed and finalized, files are uploaded via an FTP site to our Subcontractor, Signature Offset a commercial newspaper printing company located at 606 South Madison Drive Tempe, AZ 85281 *where the ink to paper process is performed*.

(Emphasis added.)

**¶6**      The City did not believe the Star met the printing requirement of A.R.S. § 39-204(C)(3) that *all* of its weekly newspapers be printed within City limits.  Accordingly, after finding *The Arizona Republic's* proposal economically advantageous, the City awarded the 2018 contract to the *Republic.*

**¶7**      The Star filed an unsuccessful formal protest pursuant to the City's Procurement Code.  The Star then filed a verified special action complaint against the City seeking injunctive relief and review of the administrative decision.  After the superior court denied the request for any injunctive relief, the parties filed competing motions for summary judgment.  The Star argued that there was no genuine issue of material fact that it was the only bidder in 2018 that both printed and published weekly newspapers within City limits, and thus should have been awarded the contract pursuant to A.R.S. § 39-204(C)(3).  Specifically, it asserted that even though it printed "a more limited number" of its newspapers within City limits, rather than the exclusive printing of all its newspapers within City limits, it nevertheless met the "printed" requirement of A.R.S. § 39-204(C)(3) as a matter of law.

**¶8**      In resolving summary judgment, the superior court noted that the Star stated, in an answer to non-uniform interrogatories, that as of November 8, 2018, it printed 150 newspapers for weekly distribution within the City; 10 of which were proof copies, and 25 were kept for USPS permit regulation purposes.  After finding that the Star was not printed exclusively within the City limits, the court held it was entitled to preferential treatment under A.R.S. § 39-204(C)(3) since it printed some of its weekly newspapers within City limits.  Specifically, the court stated:

> The plain language of A.R.S. § 39-204(C)(3) only requires that the newspaper be "printed and published within the territorial limits thereof."  There is nothing in the statute that says **all** copies of the newspaper must be printed and published within the territorial limits, nor does it say that there is a minimal threshold of printing and publishing that must occur before a newspaper receives preferential treatment.

(Emphasis in original.)

**¶9**      The City timely appealed the judgment.

**DISCUSSION**

**I.      Statutory Interpretation of A.R.S. § 39-204**

¶10      The City argues that the court incorrectly interpreted A.R.S. § 39-204(C)(3), and contends that a plain reading of A.R.S. § 39-204(C)(3) reveals that *all* printing of the Star's weekly newspapers needs to occur within the City to receive preferential treatment.  It posits that any other reading would essentially allow "a newspaper to print a single copy of its newspaper in the subject jurisdiction in order to qualify for preferential treatment under [§] 39-204(C)(3)."  Consequently, we start by addressing whether *all* copies of a newspaper of general circulation need to be printed within City limits in order to qualify for statutory preferential treatment under A.R.S. § 39-204(C)(3).

¶11      "We review issues of law involving statutory interpretation and a trial court's grant of summary judgment de novo." *Bentley v. Building Our Future,* 217 Ariz. 265, 270, ¶ 11 (App. 2007).  "When interpreting a statute, our primary goal is to find and give effect to legislative intent." *Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, 99, ¶ 5 (App. 2020).  Because a statute's plain language is "the best indicator of legislative intent," we give unambiguous words their ordinary meaning and interpret "different sections of a single statute consistently."  *Id.*  "A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Id.* (quotation omitted).

¶12      Section 39-204(A) states, "[w]hen publication of a notice in a newspaper is directed or authorized by law, it shall be in a newspaper of general circulation printed in English."  Subsection (C)(3) provides that:

> If the place of publication of the notice is not specified, publication shall be[,] . . . [i]f by a district, city or town officer, board or commission, or by any person in a district, city or town, in a *newspaper printed and published within the territorial limits thereof.*  If no such newspaper is printed and published within the limits thereof, publication may be made in a newspaper printed and published in the county in which the district, city or town is located.

(Emphasis added.)

¶13      Arizona has yet to analyze the purpose of the statute.  The California Supreme Court examined the validity of a statute that required

a legal notice appear only in newspapers of general circulation, which were both printed and published in the city, county, or state where the offered advertising was published. *In re Monrovia Evening Post*, 248 P. 1017, 1018 (Cal. 1926). That court determined the statutory requirement "inform[ed] the people concerning proceedings of a public nature for their general welfare." *Id.* at 1020. "It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required." *Id.*

¶14 The language of A.R.S. § 39-204(A) is plain and straightforward: legal notices in Arizona must be published in a newspaper of general circulation that is printed in English.

¶15 Section 39-204(C)(3) is also plain and straightforward. It requires a city or town seeking to publish legal notices to afford statutory preferential treatment to a newspaper that is both printed and published within the territorial limits of that same city or town. Notably, the "printed and published" provision requires the printing of newspapers of *general circulation*, not the mere printing of "proof copies" of that newspaper to meet A.R.S. § 39-204(C)(3)'s "printed" requirement. *See* A.R.S. § 39-204(A) ("When publication of a notice in a *newspaper* is directed or authorized by law, it *shall be in a newspaper of general circulation*. . . .") (emphasis added); A.R.S. § 39-201(A) (defining "newspaper" as a "publication regularly issued for dissemination of news of a general and public character . . . [which] shall have a bona fide list of paying subscribers"). If the city or town does not have a local newspaper that can meet the criteria, the city or town can use a newspaper printed and published in the county where that city or town is located. *See* A.R.S. § 39-204(C)(3).

¶16 The City contends that because the Star did not print *all* of its weekly newspapers within the City, it did not have to afford the paper preferential treatment in the 2018 RFP process. The word "all," however, is not now nor has it ever been in the statute. *Compare* Ariz. Rev. Code, ch. 62, § 2745(4) (1928) (". . . in a newspaper printed and published within the territorial limits thereof . . . ."); Ariz. Code Ann., ch. 89, § 18-102(4) (1939) (same); A.R.S. § 39-204(C)(3) (same).

¶17 The Legislature did not include the word "all," or other similarly limiting language, in A.R.S. § 39-204(C)(3). We decline to add the requirement "all," an additional requirement, which would be in contravention of the Legislature's intent demonstrated by the plain

language of the statute. *See Cundiff v. State Farm. Mut. Auto. Ins.*, 217 Ariz. 358, 360, ¶ 8 (2008); *see also John Munic Enters. v. Laos*, 235 Ariz. 12, 15, ¶ 5 (App. 2014) ("When the statutory language is clear and unambiguous, we look no further and assum[e] the legislature has said what it means.") (internal quotation omitted).

**¶18**　　　　The City contends that it would be burdened by a "virtual monopoly" if we accepted the superior court's interpretation of A.R.S. § 39-204(C)(3). Specifically, the City maintains that it will be forced to award a contract to the Star, despite continued increases in publication fees. The City asserts that the superior court's interpretation harms the City and its taxpayers, especially when a viable, cheaper alternative bid existed to publish its legal notices. Because the City failed to cite to any legal authority to support its virtual monopoly argument on appeal, we will not address the argument. *See* ARCAP 13(a)(7)(A); *Swanson v. Image Bank*, 202 Ariz. 226, 239, ¶ 49 (App. 2002), *aff'd in part, rev'd on other grounds*, 206 Ariz. 264 (2003); *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 93, ¶ 50 (App. 1998). Indeed, the Legislature is the proper venue for resolving such policy issues.

## II. Review of Summary Judgment Against the City

**¶19**　　　　We now turn to whether the superior court properly entered summary judgment against the City.

**¶20**　　　　We independently review a summary judgment to determine if there was a genuine issue as to any material fact and whether the moving party was entitled to judgment as a matter of law. *Blevins v. Gov't Emps. Ins.*, 227 Ariz. 456, 458, ¶ 5 (App. 2011); *see also* Ariz. R. Civ. P. 56(a). In doing so, we construe the evidence and all reasonable inferences in favor of the opposing party. *Blevins*, 227 Ariz. at 458, ¶ 5. "[W]here the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 292, ¶ 19 (App. 2010) (internal quotation omitted). Put differently, summary judgment is only warranted where a plaintiff "submits undisputed admissible evidence that would compel any reasonable juror to find in its favor." *Id.* at 293, ¶ 20. And only after the moving party meets its burden must the opposing party "come forward with evidence to establish disputed material facts." *MidFirst Bank v. Chase*, 230 Ariz. 366, 368, ¶ 6 (App. 2012); *see* Ariz. R. Civ. P. 56(c)(3)(B)(ii). We further "review the decision on the record made in the trial court, considering only the evidence presented to the trial court when it addressed the motion." *Brookover v. Roberts Enters.*, 215 Ariz. 52, 55, ¶ 8 (App. 2007).

### A.     Summary Judgment Against the City

¶21     The factual question is whether the Star printed any of its weekly newspapers of general circulation within City limits at or around the City's November 8, 2018 RFP deadline, and provided that information in its response to the RFP. *See* A.R.S. §§ 39-201, and -204(A), (C)(3). As an initial matter, there is no disagreement that the Star is published within the City. Moreover, the parties agree that printing occurs when ink is put on paper (the "ink to paper" process), regardless of the process, mechanical or otherwise.

¶22     The parties, however, disagree whether the Star advised the City in its RFP response that it printed any newspapers of general circulation within the City by November 8, 2018.

¶23     First, the Star's 2018 proposal does not reveal that it printed any weekly newspapers of general circulation within the City. The proposal contained details about circulation, and the Star's printing and publishing process, stating that its "circulation is 5,000 issues per week, with a total of 20,000 issues per month." It also noted "[a]ll publishing activities" are performed within the City, including the "printing of proofs for ads and articles, assembly, packaging and distribution." It continued, "[w]e also have the ability to print short runs of our publication in house within the territorial limits of Buckeye[,] Arizona. This ensures The Buckeye Star never runs out of newspapers, and allows us to meet the [Arizona] Statutes to actually print and publish within City Limits." The proposal then outlined how the Star prepares the newspaper, stating it "does all typesetting, headlines, placing of advertisements and placing of articles and photographs into columns" within the City. After the "files and pages are proofed and finalized, [the] files are uploaded via an FTP site to our Subcontractor, Signature Offset[,] a commercial newspaper printing company located at 606 South Madison Drive Tempe, AZ 85281[,] where the ink to paper process is performed." The "printed copy bundles" are then "broken down" at the newspaper's Buckeye facility and "are marked for the appropriate method of distribution." The proposal did not establish that the Star was printing any weekly newspapers of general circulation within the City at the time of the November 8, 2018 RFP deadline. The closest it came to this statutory requirement was the indication that the Star could print short runs of its newspaper, if needed, to meet A.R.S. § 39-204(C)(3)'s "printed" requirement.

¶24     The superior court, in granting summary judgment against the City, relied on the Star's October 2019 answers to non-uniform

interrogatories as evidence that it met the statutory "printed" requirement because it appeared to suggest that some 115 weekly newspapers of general circulation were printed within the City. But that information was not included in the Star's 2018 proposal and was not revealed until well after the November 8, 2018 RFP deadline. *See* Code of Ordinances of the City of Buckeye, Arizona, § 24-3-10(C) (governing "Competitive Sealed Proposals" and stating they "shall be submitted at the time and place designated in the request for proposals") (Aug. 28, 2018 Archive), https://library.municode.com/az/buckeye/codes/code_of_ordinances/ 326436?nodeId=CD_ORD_CH24PR_ART24-3FOPRPR. In fact, the City learned in a July 2019 admission, that as of the November 2018 deadline, the Star "did not conduct the print to paper process for its newspapers, beyond short runs of its publication, within the city limits of Buckeye." In fact, the City, in support of its summary judgment motion, noted that the Star "admitted that of the 5,000 [weekly] copies [issued], all but 150 *proof copies* are printed at their Tempe newspaper [printing facility] as of the date of their Response to the [2018] RFP." (Emphasis added.)

¶25        The Star's 2018 proposal and the information revealed during discovery demonstrate a genuine issue of material fact as to whether it provided timely information that would have allowed the City to determine whether it was entitled to preferential treatment under A.R.S. § 39-204(C)(3). Consequently, we reverse the grant of summary judgment and remand this matter to the superior court to allow the trier of fact to resolve the key factual question.

## III.    Attorneys' Fees and Costs

¶26        The Star has requested its attorneys' fees on appeal under A.R.S. §§ 12-2030 and -348(A)(4). Because we are reversing the judgment and remanding back to the superior court, we deny its request. *See* A.R.S. §§ 12-2030(A) and -348(A)(4).

## CONCLUSION

¶27        For the reasons stated above, we affirm the superior court's interpretation of the "printed" requirement of A.R.S. § 39-204(C)(3) but

reverse the summary judgment granted to the Star and against the City. We remand to the superior court for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA